247 N.J. Super. 254 (1991)
588 A.2d 1282
STATE OF NEW JERSEY, IN THE INTEREST OF M.T.S.
Superior Court of New Jersey, Appellate Division.
Submitted March 4, 1991.
Decided April 5, 1991.
*255 Before Judges J.H. COLEMAN, DREIER and LANDAU.
Wilfredo Caraballo, Public Defender, attorney for appellant (Susan Herman, Assistant Deputy Public Defender, of counsel and on the letter brief).
Edward F. Borden, Jr., Prosecutor Camden County, attorney for respondent (George Gangloff, Assistant Prosecutor, on the letter brief).
The opinion of the court was delivered by DREIER, J.A.D.
The juvenile, M.T.S., appeals from an adjudication of delinquency based upon conduct which if engaged in by an adult would constitute escape, N.J.S.A. 2C:29-5, theft of movable property, N.J.S.A. 2C:20-3a, and sexual assault, N.J.S.A. *256 2C:14-2c(1). The juvenile admitted the escape and theft charges, but contested the sexual assault. The judge imposed three concurrent two-year suspended sentences to the New Jersey Training School for Boys and placed the juvenile on a two-year period of probation with provisos that three $15 fines be paid; that there be no contact with both the victim of the sexual assault charge and the codefendant on the theft charge; that there be no alcohol or drug use; that there be urine monitoring; and that the juvenile be referred to a counselling program. He was also ordered to write an essay entitled "What I have Learned as a Result of My Offenses." Although the juvenile has appealed from the entire adjudication of delinquency, it is clear that he only challenges the finding of sexual assault.
The facts in this case are highly unusual. The juvenile and the victim were good friends. At the time of the incident she was 15 and he was 17. The juvenile was a temporary resident in the victim's mother's townhouse where the arrangements were that he would sleep on a couch in the downstairs living room. The victim had her own room on the second floor. Also residing in the townhouse were the victim's mother, two sisters, a brother, the juvenile's girlfriend (a good friend of the victim) and three other individuals. Although both the victim and the juvenile respectively had a boyfriend and girlfriend, they obviously were also attracted to each other. There had been earlier sessions of kissing, petting and on at least one occasion the juvenile putting his hands inside of the victim's pants, although he removed his hands upon the victim's request. Over the period that the juvenile lived in the home, he would often tease the victim and tell her that he was going to pay her a surprise visit to her bedroom.
Except for the account of the actual incident, the victim's and juvenile's stories about what transpired on the night in question were remarkably similar. According to the victim, at approximately 1:30 a.m. the juvenile appeared at the victim's door. His girlfriend was sleeping upstairs in a different room. The *257 juvenile had told the victim four or five times that day that he was going to pay her a surprise visit that night, although she contended she did not take him seriously. The victim then got up to go to the bathroom and saw the juvenile in her room, fully clothed, standing by the door. The victim had gone to sleep in shorts, a shirt, bra and underpants. According to the victim, she went back to bed with the juvenile still in her room and the next thing she knew she woke up with the juvenile on top of her; her pants and underpants had been removed and the juvenile was having intercourse with her. She did not cry out. She hit him once in the face, pushed him away and told him to leave. She contended that she had not indicated she wanted to have sex with him. The juvenile went downstairs and went to sleep. The next morning when the juvenile was out giving a ride to a friend, the victim informed her mother of what had occurred and the juvenile was excluded from the house, after which the victim and her mother made a complaint to the police.
The juvenile's story of the incident itself is much different. He contends that the victim had told him over the last few days to make a surprise visit to her room. When he got there on the night in question, she was walking out to the bathroom. When she came back, they started kissing and petting, and then undressed each other. They got into her bed, and after about five minutes of heavy petting, commenced to have intercourse. During the act the victim suddenly pushed the juvenile off of her and did not respond when the juvenile asked her what was wrong. He testified that she hit him once and said "how can you take advantage of me or something like that." The juvenile dressed and told the victim to calm down, since she had started to cry. He told her that he was leaving and would go with his real girlfriend, and requested that the victim not tell anyone about what had happened. He then went downstairs and went to sleep.
Faced with this sharply divergent testimony concerning the sexual activity, the trial judge made explicit factual findings. He determined that the couple had been kissing and petting, *258 had undressed and had gotten into the victim's bed and then had sex, but that the actual sex act had not been consented to by the victim. The juvenile penetrated the victim, but
I think that penetration was against her will, that it just went too far. There was never consent to the sexual act itself, and for that reason, there being no consent to the sex act itself, I have no alternative and I think that the State has proven beyond a reasonable doubt that [the juvenile] is delinquent on the charge of aggravated sexual assault.
Other than the emotional aspects of the penetration without consent, the victim testified that she was not harmed and that no force was used beyond the physical act of penetration. This raises the main legal issue in this case, namely, whether the element of "physical force" can be found under these facts.
N.J.S.A. 2C:14-2c(1), the statute under which the juvenile was charged provides:
An actor is guilty of a sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:
(1) The actor uses physical force or coercion, but the victim does not sustain severe personal injury.
The judge determined that whenever sexual penetration occurs there is also the "physical force" required by the statute. The judge stated that he relied in part on State v. Queen, 221 N.J. Super. 601, 535 A.2d 539 (App.Div. 1988), certif. denied, 110 N.J. 506, 541 A.2d 1367 (1988), for the proposition that the element of force necessary for a conviction under N.J.S.A. 2C:14-2c(1) "is sustained by penetration." We do not so read State v. Queen; nor do we read the statute as interpreted by the trial judge.
Under N.J.S.A. 2C:14-2c sexual assault requires "an act of sexual penetration," under specific circumstances. One of those circumstances is the actor's use of "physical force or coercion." N.J.S.A. 2C:14-2c(1). Another circumstance is where the victim "was physically helpless, or mentally incapacitated." N.J.S.A. 2C:14-2c(2). Had the trial judge accepted the victim's story that she was penetrated while sleeping, there might have been a finding that she was "physically helpless" at *259 the time. However, this condition is set forth in N.J.S.A. 2C:14-2c(2), a crime not originally set forth in the specification of delinquency. Be this as it may, the judge found specifically that the victim had not been sleeping, and that the intercourse had occurred during the session of heavy petting described earlier, but without the victim's express consent, and that no physical force had been used other than the actual penetration of the victim.
It is surprising to us that there is no crime involving the penetration of a victim who does not give consent, but where there is no physical force or coercion, and no helpless or mentally incapacitated victim, or other statutorily-added conditions present. One would expect that in the hierarchy of sexual offenses set forth in N.J.S.A. 2C:14-2 (i.e., the first-degree aggravated sexual assault descriptions in sub-section a and the second-degree sexual assault descriptions in sub-sections b and c), there would be an offense involving a penetration without consent without the elements of the first or second degree offenses being present. The Final Report of the New Jersey Criminal Law Revision Commission contained a vastly different sexual offense section in which a third-degree crime was recommended (under circumstances that still would not have been applicable here). See text of Proposed Section 2C:14-1b and commentary in Volume II at 194-195.
The third-degree offenses actually adopted were those of aggravated criminal sexual contact, which do not involve penetration, N.J.S.A. 2C:14-3a; but such crimes are limited to the circumstances set forth in N.J.S.A. 2C:14-2a(2) through (6), none of which is applicable here. Even the fourth degree offense of criminal sexual contact, N.J.S.A. 2C;14-3b, cannot be applied here, since the definition of such an offense is limited to the circumstances set forth in N.J.S.A. 2C:14-2c(1) through (5), circumstances which we have already determined to be inapplicable in this case.
*260 We are thus left with the anomalous conclusion that a nonconsensual penetration accomplished with no physical force, coercion or other elements specified in N.J.S.A. 2C:14-2c(1) through (5) is not criminalized by the Code of Criminal Justice. While it is difficult to believe that the Legislature intended such a result, we are governed by the statute's language. In this case there was vaginal intercourse satisfying the definition of "sexual penetration" in N.J.S.A. 2C:14-1c. The factual findings of the judge in this case preclude a determination that there was any other physical force employed. We hold that the act of penetration itself cannot satisfy the element of "physical force or coercion" since this would render N.J.S.A. 2C:14-2c(1) meaningless.
By this conclusion we in no way wish to condone the juvenile's actions. Even in a session of heavy petting such as that described earlier, a woman has every right to end the activity without sexual penetration, and the use of any external force to accomplish this end could satisfy N.J.S.A. 2C:14-2c(1). Even the force of penetration might then be sufficient if it is shown to be employed to overcome the victim's unequivocal expressed desire to limit the encounter. In this case, however, there was no such indication, and the juvenile's adjudication was based upon the judge's finding that there solely had been lack of an expressed consent, notwithstanding the obvious intimacy of the situation. The result we reach on these facts appears required by the statute. We invite a reconsideration of these standards if this interpretation does not comport with the Legislature's intended result. We reiterate that we limit our ruling to cases where there has been no definite expressed refusal by the victim, since even under this somewhat permissive language, we must still zealously guard any woman's right to decline sexual relations, regardless of the intimacy of the circumstances. Absent such express refusal, however, we cannot sustain this adjudication.
*261 The adjudication of juvenile delinquency based upon conduct which would constitute a sexual assault is reversed, and the matter is remanded to the Family Part for the correction of the records and vacation of the $15 fine attributable to this offense. Since the sentence was merely concurrent to two other similar probationary terms, the period of probation previously imposed is not affected.
Reversed and remanded.