900 A.2d 797

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT AND CROSS–RESPONDENT, v. CHARLES S. THOMAS, DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

Argued March 21, 2006—Decided June 28, 2006.

Karen L. Fiorelli, Deputy Attorney General, argued the cause for appellant and cross-respondent (Zulima V. Farber, Attorney General of New Jersey, attorney).

Daniel V. Gautieri, Assistant Deputy Public Defender, argued the cause for respondent and cross-appellant (Yvonne Smith Segars, Public Defender, attorney).

Charles S. Thomas, submitted a supplemental brief, pro se.

Justice RIVERA-SOTO delivered the opinion of the Court.

This appeal requires that we address two separate issues. First, we must consider whether, in the absence of a request by either the prosecution or the defense, the trial court erred in not charging the crime of hindering apprehension as an included or related offense of robbery. Second, we must also consider whether the trial court committed plain error when it failed to instruct the jury that, in order to sustain a conviction for second-degree eluding, the prosecution bore the burden of proving that the defendant knowingly created a risk of death or injury during flight from the commission of the crime.

We hold that, due to constitutional grand jury and notice considerations, trial courts are under no obligation to give, *sua sponte*, a related offense instruction that is not requested by either the prosecution or the defense. We further hold that there is no *mens rea* element to that portion of the eluding statute, *N.J.S.A.*

2C:29–2b, that enhances a defendant's penal exposure from a third- to a second-degree offense if, while knowingly fleeing or attempting to elude any law enforcement officer, the defendant "creates a risk of death or injury to any person."

I.

The relevant facts in this case are easily summarized. At approximately 5:30 p.m. on November 9, 2001, in Union Township, seventy-five year old Lore Kraemer was returning to her car from the cleaners when a man crouched by the front wheel of her car attacked her. He grabbed her left wrist, twisted and pulled her arm, and took her pocketbook containing some $750. The man ran to an idling station wagon driven by defendant Charles Thomas, and the station wagon drove off. The station wagon had been stolen earlier that week.

Kraemer screamed and returned to the cleaners to telephone the police. In the interim, Officer Daniel Roman, who was off-duty and driving his personal vehicle but was in uniform, drove past the cleaners and noticed the commotion. Officer Roman spoke with two men at the scene and gave chase after the station wagon. As he followed defendant, he radioed police dispatch, appraised them of what he had heard and observed, reported his location and that he was following the station wagon, and provided a description and the license plate number of the station wagon.

Responding to a radio call, Officers Stephen Ervelli and Raymond Reilly, who were driving an unmarked police car, tried to block defendant's escape route by placing their car, with all emergency flashers alight, perpendicular to defendant's route of travel. Defendant, however, swerved around that blockade, struck the unmarked car, and continued his flight, often reaching dangerously high speeds. Officers Ervelli and Reilly circled around to join in the pursuit and again confronted defendant, this time head-on. Defendant again crashed into the officers' car, continuing his flight at excessively high speeds, swerving in and out of traffic lanes, crossing into incoming traffic, and striking

several vehicles. Defendant did not stop until he drove through a red light and struck yet another vehicle, finally disabling the stolen station wagon. Defendant and his passenger jumped out of the station wagon and ran in different directions, vaulting a number of backyard fences. In the process, they discarded Kraemer's purse as well as a number of other items. The police pursued on foot. The person who robbed Kraemer, who was the passenger in the station wagon, was never caught. Defendant, however, was arrested by Officer Ervelli in a backyard some two blocks away from where defendant abandoned the disabled station wagon.

Defendant was charged with second-degree robbery, in violation of *N.J.S.A.* 2C:15–1; second-degree eluding, in violation of *N.J.S.A.* 2C:29–2b; third-degree possession of a weapon (a motor vehicle) for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4d; third-degree aggravated assault (use of a deadly weapon), in violation of *N.J.S.A.* 2C:12–1b(2); fourth-degree criminal mischief, in violation of *N.J.S.A.* 2C:17–3a and b(2); fourth-degree resisting arrest, in violation of *N.J.S.A.* 2C:29–2a; third-degree receiving stolen property (the station wagon), in violation of *N.J.S.A.* 2C:20–7; third-degree burglary, in violation of *N.J.S.A.* 2C:18–2; and third-degree theft, in violation of *N.J.S.A.* 2C:20–3. However, before trial, the State moved to dismiss the third-degree burglary and third-degree theft charges. Defendant, then, was tried on the remaining charges.

At trial, the prosecution established the facts recounted above from the victim, the owner of the station wagon,[1] and the police officers who gave pursuit. In addition, Detective Kevin Kalendek of the Union Township Police Department testified that he spoke with defendant twice, once on the day of the incident following defendant's arrest and, at defendant's specific request, again on November 13, 2001, four days later. Detective Kalendek further

---

[1] The owner identified the station wagon used by defendant as belonging to him and stated that he never gave defendant permission to use it.

testified that, at that second interview, he informed defendant of his rights against self-incrimination and to counsel, as provided in *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966), that defendant initialed and signed a written waiver of those rights, and that he stated "he was driving the station wagon[;] he didn't mean to ram the officers in their patrol car[; and] he was just trying to get away and basically that's it." Detective Kalendek asked defendant if he would provide a written statement but, at that point, "he was uncooperative and he was returned to his cell." On cross-examination, and over the prosecutor's objection, Detective Kalendek was asked if defendant "den[ied] being involved in the robbery." Detective Kalendek's reply was succinct: "Yes, he did." Defendant did not testify and he offered no witnesses in his defense.

At the close of the evidence, the trial court conducted a charge conference. The court suggested that, in light of the evidence presented, there was a rational basis on which to charge theft as a lesser included offense of robbery and defendant agreed. In addition, at defendant's request, the trial court agreed to charge simple assault as a lesser included offense of aggravated assault with a deadly weapon. Significantly, defendant never requested that the trial court charge the jury on hindering apprehension also as an included offense of or a related offense to robbery, and defendant never objected to the trial court's charge in respect of the crime of eluding. Specifically, after describing the six elements of the offense of third-degree eluding, including its *mens rea* element, the trial court charged the jury, in accordance with our Model Jury Instructions, as follows:

[T]hat would be a third degree eluding. To make it and grade the crime beyond that, the State must prove to you one additional element. That is as follows: That the flight or attempt to elude created a risk of death or injury to another person. Injury means physical pain, illness or any impairment of the physical condition.

For you to find this element you must determine that there was at least one person put at risk by the defendant's conduct including persons along the chase route. It could be police officers in chasing cars or persons in the eluding vehicle. You may infer a risk of death or injury to any person if the defendant's conduct in [fleeing] or attempting to elude the police involved a violation of the motor vehicle laws of this state.

....

It is not your job to determine whether he is guilty or not guilty of the motor vehicle offenses. However, you may consider the evidence that he committed a motor vehicle offense in deciding whether or not he created a risk of death or injury to people on the roadway. That is why [the description of applicable motor vehicle violations] is being given to you. Okay? At this same time remember that you are never required or compelled to draw this inference. As I have explained to you, it is your [province] to determine whether the facts and circumstances shown by the evidence support the inference. You are also free to accept or reject any inference that you wish.

If you find the State has proven beyond a reasonable doubt all seven elements, then your verdict should be one of guilty of the causing a risk of death or injury to people. Look at your verdict sheet for a moment. It is set up initially under eluding that would be the first six elements of the crime, guilty or not guilty. If a determination is guilty, you must decide the next issue. That grades the crime. The State must prove to you beyond a reasonable doubt as to the next issue, did he during the flight or attempt to elude the police create a risk of death or injury to another person, yes or no. Once again, all decisions you make must all [be] beyond a reasonable doubt. Okay?

Again, defendant did not object to this charge.

The jury acquitted defendant of either aggravated or simple assault, but convicted defendant of second-degree robbery, second-degree eluding, third-degree possession of a weapon (a motor vehicle) for an unlawful purpose, fourth-degree criminal mischief, fourth-degree resisting arrest, and third-degree receiving stolen property (the station wagon). On May 2, 2003, the trial court granted the State's motion for the imposition of a discretionary extended sentence and sentenced defendant to an aggregate term of imprisonment of twenty-eight years, with thirteen-and-one-half years of parole ineligibility pursuant to the No Early Release Act, *N.J.S.A.* 2C:43–7.2.

Defendant appealed, and advanced three principal arguments. He claimed, first, that the trial court erred in failing to *sua sponte* charge hindering apprehension as a lesser-included offense of robbery; second, that defendant's conviction for second-degree eluding was improper because the trial court failed to charge the jury that it must find that defendant purposely caused a risk of death or injury to another during flight or attempting to elude the police; and, third, that defendant's sentence was improper.

Citing *N.J.S.A.* 2C:1–8e, the Appellate Division held that the trial court should "not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." Equating the trial court's obligation in respect of an included offense with that in respect of a related offense, the panel found that "there was a rational, albeit slim, basis on which the jury could have found defendant not guilty of the robbery, if it credited his statement made after arrest." Based on that finding, the panel concluded that "the failure of the [trial] judge to *sua sponte* provide the lesser offense instruction constituted plain error, requiring reversal of defendant's robbery conviction."

The Appellate Division, however, held that there was no error, much less plain error, in the trial court's charge in respect of the elements required to increase the crime of eluding from a third-degree crime to a second-degree crime. Couching the issue as "whether the 'risk of death or injury' clause is an element to which the knowing culpability state applies or whether it is a strict liability requirement, standing alone with a scienter require-ment[,]" the panel rejected defendant's construction of the eluding statute and endorsed the conclusion advanced in *State v. Dixon,* 346 *N.J.Super.* 126, 136, 787 *A.*2d 211, (App.Div.2001), *certif. denied,* 172 *N.J.* 181, 796 *A.*2d 898 (2002).

Finally, because it had reversed defendant's robbery conviction, the Appellate Division saw "no need to address his sentencing arguments in full, particularly with respect to the robbery[,]" explaining:

If the State elects to retry the robbery, then a new sentencing should abide the outcome. If not, or if defendant is acquitted of robbery or convicted of a lesser offense, the court will then be called on to refashion its sentence. If defendant is in the end only guilty of eluding, the court will have the right to reformulate its sentence, including the possibility, on which we express no opinion, of extended term sentencing on the eluding. We express no view on what a proper sentence should be and specifically do not address defendant's claim that the robbery and eluding sentences should not have been consecutive, particularly given the NERA consequences. .... Finally, at the time of any new sentencing, defendant will be able to address the court with his concerns, some of which appear well-founded, that the judge misstated or overstated certain aggravating factors. The judge will

also know by that time whether *Blakely* [*v. Washington*, 542 *U.S.* 296, 124 *S.Ct.* 2531, 159 *L.Ed.*2d 403 (2004)] applies to defendant's case.[2]

Both the State and defendant sought certification, and we granted both petitions. *State v. Thomas*, 185 *N.J.* 298, 884 *A.*2d 1267 (2005). For the reasons that follow, we reverse the Appellate Division's holding in respect of defendant's robbery conviction, and therefore reinstate defendant's second-degree robbery conviction. We also affirm the panel's holding in respect of defendant's second-degree eluding conviction. Thus, we remand the cause to the Appellate Division for its consideration of defendant's sentencing arguments.

## II.

We address first that portion of the Appellate Division's decision with which we disagree: the panel's conclusion that "the failure of the [trial] judge to *sua sponte* provide the lesser offense instruction [in respect of the offense of hindering apprehension as a related offense of robbery] constituted plain error, requiring reversal of defendant's robbery conviction." As a threshold matter, we distinguish between those charges that are included within the charges in the grand jury indictment (included offenses) and those that relate to the charges returned by the grand jury (related offenses). Whether an offense is an included offense of another charge requires a comparison of the statutory elements of each charge. Thus,

[a]n offense will be considered a lesser included offense in several circumstances. One is where the proof required to establish a greater offense is also sufficient to establish every element of a lesser offense. Another is where two offenses are the same but a lesser degree of culpability is required to establish the lesser offense.

---

[2] As the panel foretold, we addressed that issue in a trilogy of cases decided one week after the Appellate Division's decision in this case, where we applied *Blakely v. Washington's* holding to our sentencing scheme. *See State v. Natale*, 184 *N.J.* 458, 878 *A.*2d 724 (2005) (eliminating presumptive terms), *State v. Abdullah*, 184 *N.J.* 497, 878 *A.*2d 746 (2005) (approving judicially-imposed consecutive sentences); *State v. Franklin*, 184 *N.J.* 516, 878 *A.*2d 757 (2005) (approving sentence enhancement on jury finding of firearm use in commission of offense).

[*State v. Muniz*, 228 *N.J.Super.* 492, 496, 550 *A.2d* 487 (App.Div.1988), *rev'd on other grounds*, 118 *N.J.* 319, 571 *A.2d* 948 (1990) (citations omitted).]

On the other hand, whether offenses are related is not a function of a comparison of statutory elements. Instead, the focus is whether the offense charged and the related offense share a common factual nucleus. *See N.J.S.A.* 2C:1–8a ("When *the same conduct* of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.") (emphasis supplied).

■ In either event, our starting point is "the fundamental premise that all elements of an offense 'must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt[,]' [and that, i]n our system of criminal justice, a defendant must have notice of the elements of the crime with which he is charged." *State v. Franklin*, 184 *N.J.* 516, 531, 534, 878 *A.2d* 757 (2005) (citations omitted). Stated differently, our review is premised on two factors: whether the constitutional right to a grand jury indictment or presentment preserved under Paragraph 8 of Article I of the New Jersey Constitution, *N.J. Const.* art. I, ¶ 8, has been observed, and whether the defendant is on fair notice of the crime charged and for which he is in jeopardy. In that context, we examine first the considerations that inform whether and under what circumstances a trial court must charge the jury in respect of an included offense.

## A.

■ Because of constitutional grand jury and notice restrictions, convictions on included offenses different from those explicitly charged in the indictment are allowed only in limited circumstances:

A defendant may be convicted of an offense included in an offense charged whether or not the included offense is an indictable offense. An offense is so included when:

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(2) It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or

(3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.

[*N.J.S.A.* 2C:1–8d.]

The determination of whether an offense is included within an offense charged is not open-ended. *N.J.S.A.* 2C:1–8e explains that "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." Thus, whether an included offense charge is appropriate requires (1) that the requested charge satisfy the definition of an included offense set forth in *N.J.S.A.* 2C:1–8d, and (2) that there be a rational basis in the evidence to support a charge on that included offense.

 Further, we differentiate between those included offense charges requested by the State and those requested by the defense. *State v. Brent*, 137 *N.J.* 107, 115, 644 *A.2d* 583 (1994). We do so because the source of authority for an included offense charge differs based on who requests the charge. When requested by the State, an included offense charge implicates the constitutional considerations of "the notice and due-process concerns of article I, paragraph 8 of the New Jersey Constitution, which states: 'No person shall be held to answer for a criminal offense unless on the presentment or indictment of a grand jury.'" *Id.* at 116, 644 *A.2d* 583. For that reason, we restrict prosecution requests for included offense jury charges solely to those offenses that are lesser-included offenses within the meaning of *N.J.S.A.* 2C:1–8d. *Id.* at 115–16, 644 *A.2d* 583.

In contrast, when an included offense charge is requested by a defendant, "the law's concern is not notice to the defendant but whether the evidence provides a rational basis for the charge[.]" *Id.* at 116, 644 *A.2d* 583. For that reason,

when a defendant requests a charge to the jury on a lesser offense, our case law has held that whether the lesser offense is strictly "included" in the greater offense, as defined by *N.J.S.A.* 2C:1–8d, is less important to a trial court's determination to charge the offense than whether the evidence presents a rational

> basis on which the jury could acquit the defendant of the greater charge and convict the defendant of the lesser.
>
> [*Id.* at 117, 644 *A.*2d 583 (citations omitted).]

We have cautioned, however, that "sheer speculation does not constitute a rational basis." *Id.* at 118, 644 *A.*2d 583.

Finally, even in the absence of a request, we have "held that a trial court has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense." *State v. Jenkins,* 178 *N.J.* 347, 361, 840 *A.*2d 242 (2004) (citations omitted). Conversely, a trial "court ha[s] no duty to instruct the jury *sua sponte* on [an included offense charge if] the evidence [does] not clearly indicate or warrant such a charge." *State v. Savage,* 172 *N.J.* 374, 401, 799 *A.*2d 477 (2002) (citations omitted). *See generally, State v. Denofa,* 187 *N.J.* 24, 41–42, 898 *A.*2d 523 (2006) (summarizing standards for lesser-included offense instructions). We have, however, noted that

> in a case in which instructing a jury on a lesser-included offense would be so unanticipated by either party as to cause complete surprise, or so inconsistent with the defense as to undermine the fairness of the proceedings, the trial court may depart from this general rule [requiring an included offense charge that is clearly indicated in the record], but must place its reasons for doing so on the record.
>
> [*State v. Garron,* 177 *N.J.* 147, 180–81, 827 *A.*2d 243 (2003) (citing *State v. Perry,* 124 *N.J.* 128, 158–64, 590 *A.*2d 624 (1991); *State v. Choice,* 98 *N.J.* 295, 300–01, 486 *A.*2d 833 (1985)).]

## B.

█ A different analysis obtains when the claim is made that the trial court should instruct the jury in respect of an offense that is related to, but not included within, the offenses charged in the grand jury indictment, that is, offenses that share a common factual ground, but not a commonality in statutory elements, with the crimes charged in the indictment. *State v. Brent* makes clear that, absent a waiver by the defendant, our constitutional guarantee of prosecution only by grand jury indictment precludes any prosecutorial request for a jury instruction in respect of a related

offense. *Supra*, 137 *N.J.* at 116, 644 *A.*2d 583 (citing *State v. Battle*, 256 *N.J.Super.* 268, 281, 606 *A.*2d 1119 (App.Div.), *certif. denied*, 130 *N.J.* 393, 614 *A.*2d 616 (1992) ("In the absence of a valid waiver, the submission to the jury of an offense which is not a lesser included offense violates a defendant's state constitutional right not to be tried except upon the presentment or indictment of a grand jury.") (citations and internal quotation marks omitted)). Thus, if, in response to the State's request for a related offense charge, the defendant knowingly and intelligently waives his constitutional rights, there is no constitutional impediment to the State's requested related offense charge. Therefore, whether requested by the defendant or the State, because a defendant can waive his constitutional grand jury protections, we allow a trial court to instruct the jury on a related charge when two factors coalesce: the defendant requests or consents to the related offense charge, and there is a rational basis in the evidence to sustain the related offense. This is so because

> a trial court cannot charge a jury on any offense requested by the defendant or suggested by the evidence. A trial court should not "scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty. The prosecutor has the primary charging responsibility, and the role of the court, within constitutional limitations, is to implement the statutory pattern of the Code [of Criminal Justice] for charging and prosecuting criminal offenses."
>
> [*Id.* at 118, 644 *A.*2d 583 (citations omitted).]

## C.

This appeal presents a question subsumed but not directly addressed in our prior authority: what is the appropriate standard for gauging whether the trial court *sua sponte* must charge the jury on a related offense not requested by either the prosecution or the defense? Clearly, because defendant made no request and interposed no objection to the charge as given, traditional strictures of appellate review require that we view the absence of either a request or an objection through the prism of plain error. *R.* 1:7–2 (absent plain error, "no party may urge as error any portion of the charge to the jury or omissions therefrom unless objections are made thereto before the jury retires to consider its

verdict.... A party shall only be prejudiced by the absence of an objection if there was an opportunity to object to a ... charge."); *State v. Chew,* 150 *N.J.*: 30, 82, 695 *A.*2d 1301 (1997), *cert. denied,* 528 *U.S.* 1052, 120 *S.Ct.* 593, 145 *L.Ed.*2d 493 (1999) ("Because defendant did not object to the challenged instruction he has waived any challenge to the instruction on appeal. *R.* 1:7–2. This Court may reverse only if it finds 'plain error.' *R.* 2:10–2.").

Neither defendant nor the State requested that the trial court's charge to the jury on the robbery count include the charge of hindering apprehension. Defendant also did not object to the robbery charge as given. In that setting, we must determine whether the trial court's charge as a whole "misinformed [the jury] as to the controlling law," *State v. R.B.,* 183 *N.J.* 308, 324, 873 *A.*2d 511 (2005) (quoting *State v. Hipplewith,* 33 *N.J.* 300, 317, 164 *A.*2d 481 (1960)), or was "clearly capable of producing an unjust result," *R.* 2:10–2; *State v. Macon,* 57 *N.J.* 325, 335, 273 *A.*2d 1 (1971) ("[T]he question whether an error is reason for reversal depends finally upon some degree of possibility that it led to an unjust verdict."), or "whether there is reasonable doubt that the jury would have ruled other than as it did." *State v. Branch,* 182 *N.J.* 338, 353, 865 *A.*2d 673 (2005) (quoting *State v. Irving,* 114 *N.J.* 427, 447, 555 *A.*2d 575 (1989)).

■ In the absence of a defendant's request for or consent to a jury instruction on a related offense, "[a] trial court should not 'scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty....'" *State v. Brent, supra,* 137 *N.J.* at 118, 644 *A.*2d 583 (quoting *State v. Sloane,* 111 *N.J.* 293, 302, 544 *A.*2d 826 (1988)); *State v. Choice,* 98 *N.J.* 295, 299, 486 *A.*2d 833 (1985) ("The trial court does not ... have the obligation on its own meticulously to sift through the entire record in every [ ] trial to see if some combination of facts and inferences might rationally sustain a [related] charge."). The application of that rule answers our present inquiry: the trial court has no *sua sponte* obligation to charge the jury on a related offense that is not requested or consented to by the defense.

## D.

Our application of this standard leads us to a conclusion different from the one reached by the Appellate Division. At trial, defendant cross-examined Detective Kalendek concerning defendant's November 13, 2001 statement. That cross-examination elicited the following question and answer:

Q. Did he deny being involved in the robbery?

A. Yes, he did.

Based on that single question and answer, the panel held that "there was a rational, albeit slim, basis on which the jury could have found defendant not guilty of the robbery, if it credited his statement made after arrest." That single question and answer addresses solely whether defendant was culpable of the offense of robbery. However, in the absence of a request by or the consent of defendant that the trial court instruct the jury on the offense of hindering apprehension, those proofs were insufficient to trigger any *sua sponte* obligation by the trial court. Therefore, for the reasons that follow, we reject the Appellate Division's analysis and conclusions.

■ The State correctly notes that "[h]indering and robbery do not share even one element in common" and, hence, one is not an included offense of the other, but only an additional offense related to defendant's conduct. *Compare N.J.S.A.* 2C:29-3 (hindering apprehension or prosecution), *with N.J.S.A.* 2C:15-1 (robbery). The State properly distinguished between these two crimes when it noted that "[h]indering is an offense against public administration of laws by those who wish to thwart the authorities in discovering their previously accomplished crimes. Robbery, on the other hand, is a violent crime against another person, requiring force in the course of a theft, which includes the immediate flight therefrom." Plainly said, while hindering apprehension may be a related offense to robbery depending on the facts adduced,[3] it

---

[3] For example, in respect of the flight portion of the offense of robbery, *see N.J.S.A.* 2C:15-1a (explaining that robbery includes "immediate flight after the

is not an included offense of robbery.[4]

In order to trigger a *sua sponte* requirement for a jury charge, constitutional considerations require that the offense defendant claims should have been charged must be (1) "included" in the offense actually charged and not simply related to the pattern of events that give rise to the offense charged, and (2) such that "the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense." *State v. Jenkins*, 178 *N.J.* 347, 361, 840 *A.*2d 242 (2004) (citations omitted). Those requirements stem from "our general view that subject to fair notice the jury should resolve the *degree* of an actor's guilt on the basis of the evidence presented to the jury." *State v. Sloane*, 111 *N.J.* 293, 300, 544 *A.*2d 826 (1988) (emphasis supplied; citations omitted). For those reasons, the Appellate Division's conclusion that the trial court *sua sponte* should have given a jury charge on hindering apprehension simply because it was an offense carrying a level of liability lower than that of robbery is rejected.

---

attempt or commission"), hindering apprehension may be a related offense to robbery because it may require proof of the same facts that sustain the robbery charge, that is, that the defendant aided the flight of the principal who committed the robbery yet the defendant lacked the specific intent to commit robbery. *See generally N.J.S.A.* 2C:2–6 (defining liability for conduct of another).

[4] This is so because hindering apprehension requires proof of an element not present in robbery: that the defendant acted with the intent "to hinder the detention, apprehension, investigation, prosecution, conviction or punishment of another...." *N.J.S.A.* 2C:29–3a. Thus, in *State v. Williams*, 232 *N.J.Super.* 432, 434, 557 *A.*2d 675 (App.Div.), *certif. denied*, 118 *N.J.* 208, 570 *A.*2d 967 (1989), the Appellate Division addressed "whether the crime of hindering apprehension is a lesser included offense of robbery[,]" and concluded it was not, a conclusion with which we concur. However, because *State v. Williams* involved a specific request by the defendant that the trial court instruct the jury on the offense of hindering apprehension, the first of the two factors required as conditions precedent to an obligation of the trial court to charge a related offense-a request by the defendant-was met. We express no opinion on the panel's separate conclusion in respect of the second factor, that is, that "there was no rational basis in the evidence for submitting 'hindering apprehension' to the jury for its consideration." *Id.* at 437, 557 *A.*2d 675 (citations omitted).

### III.

Defendant challenges his conviction for eluding, claiming that "the judge committed plain error in failing to charge an appropriate mental state with respect to that portion of the eluding statute [ ] which raises the offense from third degree to second degree 'if the flight or attempt to elude creates a risk of death or injury to any person.'" The Appellate Division, principally in reliance on *State v. Dixon*, 346 *N.J.Super.* 126, 135–36, 787 *A.*2d 211 (App.Div. 2001), *certif. denied*, 172 *N.J.* 181, 796 *A.*2d 898 (2002), rejected defendant's claim. The panel identified the issue as "whether the 'risk of death or injury' clause [of the eluding statute] is an element to which the knowing culpability state applies or whether it is a strict liability requirement, standing alone without a scienter requirement." The Appellate Division "agree[d] with the conclusion reached in *Dixon*" and affirmed the eluding charge as given by the trial court, although it claimed that "the issue is a close one[.]"

 For the reasons thoughtfully presented in *State v. Dixon, supra*, we hold that there is no *mens rea* element to the portion of the eluding statute, *N.J.S.A.* 2C:29–2b, that enhances a defendant's penal exposure from a third- to a second-degree offense if, while knowingly fleeing or attempting to elude any law enforcement officer, a defendant "creates a risk of death or injury to any person." We therefore hold, as *State v. Dixon* does, that "the structure of *N.J.S.A.* 2C:29–2b [the eluding statute], and a reasonable reading of its provisions, results in a construction that a defendant need not knowingly create the risk so long as the defendant, as in this case, is found to have committed third degree eluding with the requisite knowing culpability." *Supra*, 346 *N.J.Super.* at 136, 787 *A.*2d 211.

Tracking the language of the statute, the proofs here were overwhelming that defendant, "while operating a motor vehicle on any street or highway in this State ... knowingly fle[d] or attempt[ed] to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle

... to a full stop[.]" *N.J.S.A.* 2C:29–2b. Those proofs resoundingly showed that, in the first instance, defendant was guilty of the crime of eluding an officer in the third degree. *Ibid.* Again tracking the statute's language and without separately requiring an additional *mens rea* requirement, the penalty for eluding is raised from a third- to a second-degree offense "if the flight or attempt to elude creates a risk of death or injury to any person." Given defendant's actions, there can be no doubt that his flight from the scene of the robbery and his attempt to elude the police who pursued him created a palpable risk of death or injury. Those actions satisfied the additional *actus reus*—the guilty act and not the guilty mind—element of second-degree eluding that is absent from third-degree eluding: that "the flight or attempt to elude create[ ] a risk of death or injury to any person."

## IV.

Finally, defendant also challenges his sentence on several grounds. The Appellate Division, however, saw "no need to address his sentencing arguments in full, particularly with respect to the robbery[,]" preserving defendant's sentencing claims until the completion of the remand the panel ordered.

Because we reverse that portion of the Appellate Division's judgment which triggered the remand, and because we reinstate defendant's robbery conviction, defendant's sentencing claims are again ripe for disposition. For that reason, we remand this cause to the Appellate Division for its consideration of those claims.

## V.

The judgment of the Appellate Division in respect of defendant's robbery conviction is reversed and defendant's second-degree robbery conviction is reinstated. The judgment of the Appellate Division sustaining defendant's second-degree eluding conviction is affirmed. The cause is remanded to the Appellate Division for its consideration of defendant's sentencing arguments.

*For Affirmance in part/ reversal in part/ remandment*—Chief Justice PORITZ and Justices LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—6.

*Opposed*—None.