# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5004-16

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LUIS M. CARABALLO,

     Defendant-Appellant.

_____

Submitted April 26, 2021 – Decided June 30, 2021

Before Judges Fasciale and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Ind. 05-07-1360.

Joseph E. Krakora, Public Defender, attorney for appellant (Alison Gifford, Assistant Deputy Public Defender, of counsel and on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Ian C. Kennedy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from his jury trial convictions for second-degree sexual assault by physical force not resulting in severe personal injury, N.J.S.A. 2C:14-2(c)(1). Defendant was not indicted for that crime; rather, he was charged by the grand jury with first-degree aggravated sexual assault upon a physically helpless victim, N.J.S.A. 2C:14-2(a)(7). Defendant contends the trial court erred by affording the jury the option to convict for second-degree sexual assault, arguing that N.J.S.A. 2C:14-2(c)(1) is a related offense but not a lesser-included offense of the first-degree aggravated sexual assault crime for which he was indicted. Defendant also contends for the first time on appeal that the Model Jury Charge read to the jury impermissibly shifted the burden of proof, placing the burden on a defendant to prove that the victim did not consent to sexual penetration. After carefully reviewing the record in light of the applicable legal principles, we reject defendant's contentions and affirm.

I.

In July 2005, a grand jury indicted both defendant and co-defendant Elvis Marmolejos[1] on two counts of first-degree aggravated sexual assault, N.J.S.A.

----

[1] Co-defendant Marmolejos is not a party to this appeal.

A-5004-16

2C:14-2(a)(7).[2] In January 2007, defendant and Marmolejos were tried together at a bench trial. The verdict sheet included charges for first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(7), second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1), and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b). The completed verdict sheet signed by the judge on January 17, 2007 included handwritten notations characterizing the second- and fourth-degree crimes as lesser-included charges. The judge, sitting as the trier of fact, found defendant and Marmolejos guilty of the first-degree crimes, and therefore had no occasion to render a verdict on the lesser-included offenses listed sequentially on the verdict sheet.

On appeal, we reversed defendant's bench trial convictions and remanded for a new trial. We concluded the trial court violated defendant's Confrontation Clause rights by considering statements co-defendant Marmolejos made to police that incriminated defendant but were not subject to cross examination. Another trial judge previously ruled that those statements must be redacted from the transcript of co-defendant's statement to police to comply with the rule

---

[2] One count of the indictment charged defendant with engaging in penile oral penetration of the victim. The second count charged defendant with engaging in penile vaginal penetration. Both counts relate to a single episode on July 24, 2004 involving a single victim.

A-5004-16

established in <u>Bruton v. United States</u>, 391 U.S. 123 (1968).  However, the statements that inculpated defendant were not completely blacked-out as ordered; rather, they were merely crossed-out and still legible.  <u>State v. Caraballo</u>, No. A-6259-06 (App. Div. Jan. 6, 2009).  The State on appeal agreed that defendant's confrontation rights were violated, but argued the error was harmless.  We concluded the admission of co-defendant Marmolejos's oral statement to police through a detective's testimony and the redacted—but readable—transcript of that statement was not harmless error, prompting our decision to order a new trial.

The same judge who presided over the bench trial presided at the retrial.  This time, the case was heard by a jury, and defendant was tried alone over the course of five nonconsecutive days.  The trial court considered whether to instruct the jury as to the crime of second-degree sexual assault by means of physical force not resulting in severe personal injury, N.J.S.A. 2C:14-2(c)(1), and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3.[3]  Defense counsel objected, arguing that the evidence adduced by the State did not support the

---

[3]  As we have noted, those crimes had been considered as lesser-included offenses at the first trial. The record before us does not reveal whether defendant objected at the first trial.  That issue was not raised in defendant's appeal from his bench trial convictions.

second-degree or fourth-degree offenses.  Counsel did not argue to the trial court that second-degree sexual assault under N.J.S.A. 2C:14-2(c)(1) was not a lesser-included offense of first-degree aggravated sexual assault under N.J.S.A. 2C:14-2(a)(7).  Rather, counsel argued to the trial court that there was no factual basis to support a conviction for the second- or fourth-degree crimes and thus no rational basis to charge the jury on these lesser offenses.

After considering the arguments made by defendant and the State, the trial court decided not to instruct the jury on fourth-degree criminal sexual contact, finding that the facts elicited at the second trial did not support that charge. However, the court found there was a rational basis to charge the jury on second-degree sexual assault by physical force not resulting in severe personal injury. Accordingly, the court read to the jury from the Model Jury Charge for the second-degree crime set forth in N.J.S.A. 2C:14-2(c)(1).

The jury acquitted defendant of the two first-degree aggravated sexual assault charges but found him guilty on both counts of second-degree sexual assault by physical force not resulting in severe personal injury.

On March 19, 2010—the day he was scheduled to be sentenced—defendant boarded a plane and fled to the Dominican Republic.  Defendant was extradited to the United States in 2016. Following extradition, defense counsel

5

A-5004-16

renewed a motion to dismiss the indictment and for judgment notwithstanding the verdict. That motion had originally been scheduled to be heard on the March 19, 2010 sentencing date. Defendant argued the trial court erred in charging the jury on second-degree sexual assault, and that based on the facts "he was either guilty of first-degree aggravated sexual assault or not guilty." Defendant also argued that he could not be prosecuted under the extradition order as that order permitted only prosecution for aggravated sexual assault rather than simple sexual assault, and the jury had already acquitted him of the former charge.[4] The motion was heard by a different judge than the one who presided over the 2010 jury trial. The motion judge heard oral argument on October 19, 2016, and on November 30, 2016, rendered a written opinion denying defendant's renewed motion on both grounds.

On May 12, 2017, defendant was sentenced to two concurrent nine-year prison terms, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. This appeal follows.

---

[4] Defendant has not renewed this second argument on appeal. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

A-5004-16

We briefly summarize the facts elicited at trial relevant to the issues now raised on appeal. On July 24, 2004, the victim, J.S.,[5] visited the home of her boyfriend in West Paterson. She was accompanied by her female friend, V.B. There, J.S. consumed a substantial amount of fortified wine. At some point, V.B. received a call from another friend, J.A., inviting her to come to J.A.'s house to pick up a bottle of rum that J.A. had purchased as a gift for V.B. Initially, J.S. drove the vehicle to J.A.'s house, but was so inebriated that V.B. had to take over. J.S. fell asleep in the car and did not awake until they arrived at J.A.'s home. J.S. and V.B. went to J.A.'s bedroom. Defendant and Marmolejos were already in the bedroom, which was dark, partially illuminated by neon lighting. J.S. fell asleep on the bed. At some point, V.B. left the room. When J.S. awoke, her pants were off. She was lying on her back with defendant on top of her, penetrating her with his penis. Marmolejos was sitting in a chair a few feet away masturbating. As she awoke, J.S. heard defendant say, "Oh shit." Defendant and Marmolejos then put on their pants and left.

J.S. reported the incident to police the next day. During the ensuing investigation, defendant gave a statement to police acknowledging that both he

---

[5] We use initials to protect the identity of the sexual assault victim and her friends. N.J.S.A. 2A:82-46.

and Marmolejos had oral and vaginal sex with J.S. He told police it was consensual and that he believed J.S. was awake at the time "because she was moving her head."

Defendant testified at trial in his own defense. He claimed that J.S. declined alcohol when offered, stating, "[n]o, I don't drink." He claimed that J.S. eventually laid down on the bed and Marmolejos laid next to her, J.S. then fell asleep, and when she awoke, she and defendant "kind of like locked eyes" and they started to kiss. Defendant claimed J.S. voluntarily performed oral sex on him. He testified he then put on a condom and started to have vaginal sex. Defendant claimed that J.S. consensually participated and that she "was kind of like kissing [his] neck and behind [his] ears." Defendant testified that he and Marmolejos left the room abruptly because defendant suddenly remembered that he had to return the car soon.

Defendant raises the following arguments for our consideration:

> POINT I
>
> THE COURT'S DECISION TO INSTRUCT THE JURY ON SECOND-DEGREE SEXUAL ASSAULT BY PHYSICAL FORCE OVER DEFENSE COUNSEL'S OBJECTION NECESSITATES REVERSAL OF DEFENDANT'S CONVICTIONS BECAUSE SECOND-DEGREE SEXUAL ASSAULT BY PHYSICAL FORCE IS NOT A LESSER[-]INCLUDED OF THE INDICTED OFFENSE.

8

<u>POINT II</u>

THE JURY INSTRUCTION ON SECOND-DEGREE SEXUAL ASSAULT UNCONSTITUTIONALLY SHIFTED THE BURDEN OF PROOF TO THE DEFENDANT TO SHOW CONSENT. (Not raised below)

II.

We first address defendant's contention the trial judge erred in instructing the jury on second-degree sexual assault by physical force. Although defendant acknowledges that first-degree aggravated sexual assault of a physically helpless victim, N.J.S.A. 2C:14-2(a)(7), and second-degree sexual assault by physical force, N.J.S.A. 2C:14-2(c)(1) are related offenses, the gravamen of defendant's argument is that the latter crime is not a lesser-included offense of the former. He thus argues his State constitutional rights were violated when the jury was instructed to consider an offense for which he had not been charged by indictment.

We begin our analysis by acknowledging the foundational legal principles governing this appeal. Article I, paragraph 8 of the New Jersey Constitution guarantees the right to have a grand jury determine whether a defendant should stand trial for an alleged crime. That constitutional provision states, "[n]o person shall be held to answer for a criminal offense unless on the presentment

or indictment of a grand jury."  In <u>State v. Brent</u>, our Supreme Court recognized, however, that a petit jury may consider lesser-included crimes that were not charged in an indictment without running afoul of Article I, Paragraph 8.  137 N.J. 107, 115–17 (1994).

In <u>State v. Jenkins</u>, the Court reaffirmed the well-established rule that "a trial court has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense."  178 N.J. 347, 361 (2004) (citing <u>State v. Garron</u>, 177 N.J. 147, 180 (2003); <u>State v. Choice</u>, 98 N.J. 295, 299 (1985); <u>State v. Powell</u>, 84 N.J. 305, 318–19 (1980)).

Therefore, the critical issue in this case is whether, on the facts adduced at trial, the second-degree sexual assault crime defined N.J.S.A. 2C:14-2(c)(1) is a lesser-included offense of the first-degree aggravated sexual assault crime defined in N.J.S.A. 2C:13-2(a)(7).  N.J.S.A. 2C:1-8(d) provides that an offense is a lesser-included offense when:

> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
> (2) It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or
> (3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the

10

same person, property[,] or public interest or a lesser kind of culpability suffices to establish its commission.

In State v. Thomas, our Supreme Court explained that an offense falls within the statutory definition of a lesser-included offense in several circumstances. 187 N.J. 119, 129–30 (2006). "One [such circumstance] is where the proof required to establish a greater offense is also sufficient to establish every element of a lesser offense. Another [circumstance] is where two offenses are the same but a lesser degree of culpability is required to establish the lesser offense." Ibid. (quoting State v. Muniz, 228 N.J. Super. 492, 496 (App. Div. 1988), rev'd on other grounds, 118 N.J. 319 (1990)).

The Court in Thomas highlighted the distinction between lesser-included offenses and "related" offenses, noting, "[o]n the other hand, whether offenses are related is not a function of a comparison of statutory elements. Instead, the focus is whether the offense charged and the related offense share a common factual nucleus." Id. at 130. The Court further explained the determination whether an offense is a lesser-included offense or merely a related offense is "premised on two factors: whether the constitutional right to a grand jury indictment or presentment . . . has been observed, and whether the defendant is on fair notice of the crime charged and for which he is in jeopardy." Ibid.

11

We next apply these general principles by comparing the statutory elements of the two crimes at issue before us. N.J.S.A. 2C:14-2(a)(7)[6] provides that a person is guilty of first-degree aggravated sexual assault if he or she

> commits an act of sexual penetration [upon a victim] whom the actor knew or should have known was physically helpless or incapacitated, intellectually or mentally incapacitated, or had a mental disease or defect which rendered the victim temporarily or permanently incapable of understanding the distinctively sexual nature of the conduct, including, but not limited to, being incapable of providing consent.

The statute defines "physical helplessness" as "that condition in which a person is unconscious or is physically unable to flee or is physically unable to communicate unwillingness to act." N.J.S.A. 2C:14-1(g). Importantly, in State v. Rush, we held the jury was free to find the victim was physically helpless within the meaning of the criminal sexual contact statute, N.J.S.A. 2C:14-3,[7]

---

[6] N.J.S.A. 2C:14-2(a)(7) was since amended in 2011 and 2013 to include victims that are not only "physically helpless or incapacitated" but also "intellectually or mentally incapacitated." See Cannel, N.J. Criminal Code Annotated, cmt. 2 on N.J.S.A. 2C:14-2 (2020).

[7] We note the definition of the term "physically helpless" set forth in N.J.S.A. 2C:14-1(g) applies to all offenses in chapter 14 of Title 2C. Accordingly, our holding in Rush that a jury may find that a victim is physically helpless if he or she is sleeping at the moment of an act of sexual contact as defined in N.J.S.A. 2C:14-1(d) applies as well to a victim who is sleeping at the moment of an act of sexual penetration as defined in N.J.S.A. 2C:14-1(c).

A-5004-16

based on her testimony that she was asleep when defendant touched her. 278 N.J. Super. 44, 49 (App. Div. 1994). We embraced the reasoning in State v. Puapuaga, 54 P.2d 170, 172 (Wash. 1989), that "[t]he state of sleep appears to be universally understood as unconsciousness or physical inability to communicate unwillingness. Therefore, any rational trier of fact could have found beyond a reasonable doubt that the victim was physically helpless based on the evidence she was asleep." Rush, 278 N.J. Super. at 49; see also State ex rel. M.T.S., 247 N.J. Super. 254, 258–59 (App. Div. 1991), rev'd, State ex rel. M.T.S., 129 N.J. 422 (1992) ("Had the trial judge accepted the victim's story that she was penetrated while sleeping, there might have been a finding that she was 'physically helpless' at the time."). Accordingly, a victim may be found to be physically helpless for purposes of N.J.S.A. 2C:14-2(a)(7) if the actor knew or should have known the victim was asleep at the moment of sexual penetration.

N.J.S.A. 2C:14-2(c)(1) provides that a defendant is guilty of second-degree sexual assault if he or she "commits an act of sexual penetration with another person [by using] physical force or coercion, but the victim does not sustain severe personal injury."

In State ex rel. M.T.S., our Supreme Court held:

> [A]ny act of sexual penetration engaged in by the
> defendant without the affirmative and freely-given

A-5004-16

permission of the victim to the specific act of penetration constitutes the offense of sexual assault. Therefore, physical force in excess of that inherent in the act of sexual penetration is not required for such penetration to be unlawful. The definition of "physical force" is satisfied under N.J.S.A. 2C:14-2(c)(1) if the defendant applies any amount of force against another person in the absence of what a reasonable person would believe to be affirmative and freely-given permission to the act of sexual penetration.

[129 N.J. at 444.]

The Court in M.T.S. further explained that when the State "does not allege violence or force extrinsic to the act of penetration, the factfinder must decide whether the defendant's act of penetration was undertaken in circumstances that led the defendant reasonably to believe that the alleged victim had freely given affirmative permission to the specific act of sexual penetration." Id. at 447–48. In other words, as the Supreme Court later confirmed in Garron, "the act of sexual penetration itself, without [the victim's] consent, would be sufficient to establish the physical force or coercion required to support a sexual assault conviction." 177 N.J. at 182.

Based on our comparison of the statutory elements of the two crimes at issue, we conclude the proof adduced at trial that was required to establish the first-degree crime of aggravated sexual assault of a physically helpless victim was also sufficient to establish every element of the second-degree crime of

14

sexual assault by physical force not resulting in severe personal injury. Thomas, 187 N.J. at 129. The proof required under the first-degree crime that the victim was physically helpless—in this instance by virtue of being asleep—also established that she did not consent to sexual penetration. Furthermore, the second-degree crime does not require the use of greater physical force against the victim than required under the first-degree crime because the act of penetration alone establishes the physical force element of the second-degree crime. Rush, 278 N.J. Super. at 49. The lesser offense, in other words, did not require proof that was not also required to convict on the greater offense. Accordingly, we hold that in the factual circumstances presented in this case, the second-degree crime was a lesser-included offense of the first-degree crime charged in the indictment, and not merely a related offense within the meaning of Thomas, 187 N.J. at 129.

We add that defendant was on fair notice that he was being tried for the lesser-included crime consistent with notions of due process and fairness. See Graham, 223 N.J. Super. at 577 ("[T]he New Jersey Constitution bars conviction of the lesser included offense unless the grand jury intended that result and the defendant had fair notice that he was being tried for that offense."). As we have already noted, at the first bench trial, the verdict sheet included the second-

15

degree sexual assault charge as a lesser-included offense. In these circumstances, the State's request for the lesser-included charge at the second trial could not have been "so unanticipated" by defendant "as to cause complete surprise." Thomas, 187 N.J. at 132 ("[I]n a case in which instructing a jury on a lesser-included offense would be so unanticipated by either party as to cause complete surprise, or so inconsistent with the defense as to undermine the fairness of the proceedings, the trial court may depart from this general rule [requiring the jury to be instructed on a lesser-included charge for which there is a rational basis], . . . but must place its reasons for doing so on the record.") (quoting Garron, 177 N.J. at 180–81).

We reject defendant's contrary contention that "there was no way for defendant to know that the State would again improperly request the second-degree sexual assault charge as [a] lesser-included offense." We stress under both N.J.S.A. 2C:14-2(a)(7) and N.J.S.A. 2C:14-2(c)(1), the critical fact-sensitive question for the jury to decide was whether defendant knew or should have known J.S. was asleep when she was sexually penetrated. That condition would both make her helpless for purposes of N.J.S.A. 2C:14-2(a)(7), see Rush, 278 N.J. Super. at 49 and render her unable to give affirmative consent for purposes of N.J.S.A. 2C:14-2(c)(1), see Garron, 177 N.J. at 182. We are

16

satisfied defendant had fair notice and in fact mounted a defense to both charges by presenting evidence that the victim was awake and consensually participated in the sexual acts. Accordingly, instructing the jury on N.J.S.A. 2C:14-2(c)(1) was in no way inconsistent with the defense strategy. See Thomas, 187 N.J. at 132.

III.

Defendant does not dispute that he had intercourse with J.S. The critical issue at trial was whether the sexual penetration was consensual. The trial court read verbatim the model jury instructions concerning consent to sexual acts. See Model Jury Charges (Criminal), "Sexual Assault (Force/Coercion) (N.J.S.A. 2C:14-2(c)(1))" (rev. Jan. 24, 2005). Defendant argues for the first time on appeal the Model Jury Charge on sexual assault is unconstitutional, impermissibly shifting the burden of proof with respect to consent. We disagree. The model charge does not require a defendant to prove consent and is clear in instructing the jury that the State bears the burden of proof on every element.

We begin our analysis by recognizing that defendant did not object to the jury instructions as given. As our Supreme Court made clear in State v. Montalvo, when a defendant does not object to the charge, "there is a presumption that the charge was not error and was unlikely to prejudice . . .

defendant's case."  229 N.J. 300, 320 (2017) (quoting State v. Singleton, 211 N.J. 157, 182 (2012)).  Relatedly, in State v. Whitaker, we held that reading verbatim from a Model Jury Charge "is a persuasive argument in favor of the charge as delivered."  402 N.J. Super. 495, 513–14 (App. Div. 2008) (quoting State v. Angoy, 329 N.J. Super. 79, 84 (App. Div. 2000)).

We have carefully reviewed the Model Jury Charge at issue and conclude it mirrors the Supreme Court's landmark decision in M.T.S.  The Court in that case held the State must prove beyond a reasonable doubt that a defendant could not reasonably have believed the victim freely consented to sex but does so without placing the onus on the victim to show that he or she resisted.  129 N.J. at 444–49.

The trial court in this case instructed the jury,

> The third element that the State must prove beyond a reasonable doubt is that defendant used physical force or coercion. Physical force is defined as the commission of the act of sexual penetration without the victim's freely and affirmatively given permission to the specific act of penetration alleged to have occurred. You must decide whether the defendant's alleged act of penetration was undertaken in circumstances that led the defendant reasonably to believe that the victim had freely given affirmative permission to the specific act of sexual penetration.

A-5004-16

That portion of the Model Jury Charge closely tracks the Supreme Court's explanation that "the factfinder must decide whether the defendant's act of penetration was undertaken in circumstances that led the defendant reasonably to believe that the alleged victim had freely given affirmative permission to the specific act of sexual penetration." Id. at 447–48.

The trial court further instructed the jury,

> Persons need not, of course, expressly announce their consent to engage in an act of sexual intercourse for there to be affirmative permission. Permission to engage in an act of sexual penetration can be and indeed often is indicated through physical actions rather than words. Permission is demonstrated when the evidence, in whatever form, is sufficient to demonstrate that a reasonable person would have believed that the alleged victim had affirmatively and freely given authorization to the act.

That portion of the Model Jury Charge closely tracks the Supreme Court's explanation that, "[p]ermission is demonstrated when the evidence, in whatever form, is sufficient to demonstrate that a reasonable person would have believed that the alleged victim had affirmatively and freely given authorization to the act." Id. at 445.

Finally, the trial court instructed the jury,

> Proof that the act of sexual penetration occurred without the victim's permission can be based on evidence of conduct or words in light of surrounding

A-5004-16

circumstances and must demonstrate beyond a reasonable doubt that a reasonable person would not have believed that there was affirmative and freely given permission. If there is evidence to suggest that the defendant reasonably believed that such permission had been given, the State must demonstrate beyond a reasonable doubt either that the defendant did not actually believe that such permission had been freely given, or that such a belief was unreasonable under all of the circumstances.

[(emphasis added).]

That portion of the Model Jury Charge closely tracks the Supreme Court's explanation:

If there is evidence to suggest that the defendant reasonably believed that such permission had been given, the State must demonstrate either that defendant did not actually believe that affirmative permission had been freely-given or that such a belief was unreasonable under all of the circumstances. Thus, the State bears the burden of proof throughout the case.

[Id. at 449.]

We add that the Model Jury Charge on consent in sexual assault cases must be read in context with the more general instruction on the presumption of innocence and the requirement that the State prove all elements beyond a reasonable doubt. In Zappasodi v. State, we held that "[t]he trial judge's instructions must be read as a whole. So long as the charges adequately convey the law to the jury and do not mislead or confuse, we should not interfere." 335

20

N.J. Super. 83, 89 (App. Div. 2000) (citing <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 148 N.J. 396, 418 (1997)).

In sum, we conclude the model jury instructions on consent do not, as defendant contends, place the burden on him to prove the victim consented to sexual penetration. Rather, these instructions create no greater burden than that which is placed upon any defendant who attempts to negate evidence supporting a necessary element of the offense charged—in this instance, the State's evidence that J.S. was asleep when the sexual penetration occurred. The jury instructions, read in their entirety, made clear that the prosecution bears the burden of proving every element beyond a reasonable doubt. We therefore are satisfied that the Model Jury Charge accurately reflects the Supreme Court's holding in <u>M.T.S.</u>

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5004-16