787 A.2d 211 (2001)
346 N.J. Super. 126
STATE of New Jersey, Plaintiff-Respondent,
v.
Calvin DIXON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 2, 2001.
Decided December 20, 2001.
*212 Peter A. Garcia, Acting Public Defender, attorney for appellant (John J.A. Burke, Designated Counsel, of counsel and on the brief).
William H. Schmidt, Bergen County Prosecutor, attorney for respondent (Pia S. Perez, Assistant Prosecutor, of counsel and on the brief).
Appellant filed a pro se supplemental brief.
Before Judges STERN, EICHEN and LINTNER.
The opinion of the court was delivered by STERN, P.J.A.D.
Tried by jury, defendant was convicted of second degree eluding, N.J.S.A. 2C:29-2b (count one), and resisting arrest, N.J.S.A. 2C:29-2a, as a lesser included disorderly persons offense (count two). Co-defendant Gary M. Scott was also convicted of the disorderly persons offense of resisting arrest, N.J.S.A. 2C:29-2a, as a lesser included offense on count three. Defendant was sentenced to an extended term, pursuant to N.J.S.A. 2C:44-3a, of eleven years in prison with three years and six months to be served before parole eligibility on count one. He received a concurrent term of six months imprisonment on count two. Defendant appeals and argues:
POINT I [THE TRIAL JUDGE'S] FAILURE TO CHARGE THE JURY ON IDENTIFICATION DENIED DEFENDANT A FAIR TRIAL AND IS REVERSIBLE ERROR, BECAUSE THE SOLE ISSUE, WHETHER DEFENDANT WAS THE CAR'S DRIVER, WAS SUPPORTED ONLY BY EYEWITNESS TESTIMONY NOT CORROBORATED BY INDEPENDENT IDENTIFICATION EVIDENCE (NOT RAISED BELOW).
POINT II [THE JUDGE] COMMITTED REVERSIBLE ERROR WHEN, CONTRARY TO N.J.S.A. 2C:2-2(C), HE FAILED TO CHARGE THE JURY ON THE LEVEL OF CULPABILITY SUFFICIENT TO PROVE DEFENDANT CREATED A RISK OF DEATH OR INJURY TO ANY PERSON, THE ESSENTIAL ELEMENT OF THE SECOND DEGREE OFFENSE *213 OF ELUDING DEFINED UNDER N.J.S.A. 2C:-29-2[b] (NOT RAISED BELOW).
POINT III DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE THE JURY WAS PERMITTED TO INFER THAT DEFENDANT'S CONDUCT CREATED "A RISK OF DEATH OR INJURY" IF IT DETERMINED THAT HIS CONDUCT "INVOLVED" ANY OF THE MOTOR VEHICLE OFFENSES SET FORTH IN CHAPTER 4 OF TITLE 39, IN THE ABSENCE OF AN INSTRUCTION THAT THE JURY HAD TO FIRST DETERMINE THAT DEFENDANT WAS GUILTY OF THOSE OFFENSES BEYOND A REASONABLE DOUBT BEFORE IT COULD DRAW THE INFERENCE. (NOT RAISED BELOW).
POINT IV DEFENDANT'S EXTENDED TERM SENTENCE OF ELEVEN YEARS OF IMPRISONMENT WITH THREE AND ONE-HALF YEARS OF PAROLE INELIGIBILITY IS EXCESSIVE.
In a pro se supplementary brief, defendant also contends:
POINT I THE DEFENDANT'S SENTENCE SHOULD BE VACATED BECAUSE IT VIOLATES [THE] DUNBAR ANALYSIS AND [IS] PER SE ILLEGAL.
POINT II THE DEFENDANT['S] CONSTITUTIONAL RIGHT TO A FAIR TRIAL WAS VIOLATED BECAUSE THE DEFENDANT['S] TRIAL ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WITH THE RESULT THAT A SUSPECT VERDICT WAS RENDERED AGAINST THE DEFENDANT.
POINT III THE DEFENDANT IS ENTITLED TO A FULL EVIDENTIARY HEARING BECAUSE THE DEFENDANT HAS PRESENTED A PRIMA FACIE CASE ON INEFFECTIVE ASSISTANCE OF COUNSEL.
Our careful review of the record leads us to conclude that these contentions are without merit and require only the following discussion in a written opinion. R. 2:11-3(e)(2).

I.
On November 6, 1998, at about 1:30 a.m., Officer Daniel Graber, a seven year veteran of the Port Authority Police Department, was on traffic patrol in a marked police vehicle. As he was driving westbound on the upper deck of the George Washington Bridge, he observed a maroon Plymouth Horizon with a broken tail light that was speeding and passing other traffic. Officer Graber began to follow the vehicle which he clocked at approximately 74 m.p.h.
Officer Graber followed the car for about one-half mile and then "activated" his overhead emergency lights to stop the car. However, the car kept going. Officer Graber then turned on his siren but the driver did not pull over. Officer Graber thereafter radioed the George Washington Bridge communications desk, advised that he "was attempting to stop a vehicle," and gave them the license plate number and description of the car. As a result, Officer Matthew Lombardo joined Officer Graber in the chase.
Officer Graber followed the Plymouth onto Route 4, where it was traveling at "[a]bout 70 miles an hour" and "was weaving in and out of the lanes and traffic." Although the traffic was "light," the driver's conduct caused "other motorists to hit *214 the[ir] brakes, stop[ ][and] swerve," to avoid a collision. The car then "veered" from the left lane to the right hand exit that led to the City of Englewood. Officers Graber and Lombardo continued chasing the car with their lights and sirens on.
The Plymouth Horizon, now traveling about 50 m.p.h. in a 25 m.p.h. local traffic zone, drove through "at least 20" stop signs on several side streets, forcing drivers who had the right of way "to hit their brakes and stop." When the car slowed down to about 40 m.p.h., one of the passengers opened the rear door of the car, jumped out and ran away.
The vehicle then pulled onto a "dead end-street" into an apartment complex. As the vehicle slowed down, defendant, who had been driving, and the front seat passenger "jumped out" of the car. Graber testified that defendant ran to the left of a large "dumpster" into "an open field," and the front seat passenger ran to the right of the dumpster into the same field. Meanwhile, the car continued to roll down the street into the dumpster, and Graber "yelled" to Lombardo "to get the driver."
Officer Graber immediately arrested a passenger who remained in the rear of the car, as Officer Lombardo pursued defendant and the front seat passenger on foot. Lombardo was able to arrest defendant about fifty yards from the car, although the front seat passenger escaped. After placing defendant under arrest, the officers put him in the rear of the patrol car with the back seat passenger, co-defendant Scott. Meanwhile, approximately ten officers arrived on the scene as "back-up." For about one hour the officers unsuccessfully tried to apprehend the two occupants who had fled.
While processing defendant at headquarters, Graber discovered that defendant's license was suspended, and he issued six motor vehicle summons. Graber specified that defendant was charged with driving while suspended, reckless driving, speeding, having an inoperable stop light, and failure to comply with the lawful directions of a police officer. Graber also testified that his in-court identification of defendant was based on the amount of time he spent with defendant that night.
Officer Lombardo, a six year veteran of the Port Authority Police Department, testified at trial that his vehicle was directly behind defendant's, and that he "was able to maintain eye contact" and never lost sight of defendant from the moment he exited the car to when he was apprehended. He further testified that, after the suspects ran from the car, the passenger ran to the left, jumping over a fence and into a water viaduct, and the driver ran towards the right, behind the housing complex before he "stumbled" and was pushed to the ground by Lombardo. Defendant resisted arrest, but Lombardo "finally was able to cuff him."

II.
Defendant argues that "[e]ven in the absence of a request to charge, the nature of the eyewitness identifications, combined with the fact that identification was the sole defense, required [the judge] to give the jury an identification charge." Defendant asserts that Officer Graber's identification was based solely on clothing and a twelve hour interview conducted at police headquarters. Defendant further contends that Officers Graber and Lombardo never actually saw the face of the driver before he exited the car, and therefore, his conviction for second degree eluding should be reversed because identification was "the key issue in this case, and the judge ... failed to charge the jury on identification."
*215 The judge, however, did charge on identification. While he gave no specific instruction during his original charge, defense counsel thereafter pointed out she "should have ... asked for an identification charge," and requested that it be given "because we're disputing that Mr. Dixon is in fact the driver of the car." She also asked that "cross-racial identification be charged because it's pretty obvious my client is an African American and the officers were both caucasian." Over the prosecutor's objection, the judge then supplemented the charge and instructed the jurors on these subjects. Defendant posed no objection to the supplementary instructions after they were given and does not attack their adequacy before us.

III.
Defendant argues that, assuming he was the driver, his "conduct did not result in injury to anyone," traffic was light, and "Officer Graber's testimony that several vehicles had to apply their brakes to avoid a collision" lacked reference to a "specific event." He, therefore, asserts that, particularly "[u]nder these facts, defendant was entitled to have the jury told that they must find that he knowingly created a risk of death or injury to anyone" in order to be convicted of second degree eluding. Stated differently, defendant asserts that "the jury had to find beyond a reasonable doubt that defendant Dixon knowingly created a risk of death or injury to any person." The State contends that it met "its burden of establishing that defendant's unlawful driving created a risk of death or injury to others," the prerequisite to second degree eluding, and that "the trial judge properly charged the jury concerning the crime of second-degree eluding."
The judge instructed the jurors:
In order to convict the defendant of third degree [e]luding the State must prove beyond a reasonable doubt each of the following six elements. Number one, that Calvin Dixon was operating a motor vehicle on a street or highway in this state. Number two, that Daniel Graber and Matthew Lombardo are or [were] a police or law enforcement officer. Number three, that Daniel Graber and/or Matthew Lombardo signalled Calvin T. Dixon to bring the vehicle to a full stop. Number four, that Calvin T. Dixon knew the officers had signalled him to bring the vehicle to a full stop. Number five, that Calvin Dixon knew that Daniel Graber and/or Matthew Lombardo were or was a police or law enforcement officer. And number six, that Calvin Dixon knowingly fled or attempted to [e]lude the officer.
Mere failure to stop does not constitute flight. To find flight you must find that the defendant's purpose in leaving was to avoid being stopped by the officer. A person attempts to perform an act if he does or omits to do anything with the purpose of performing that act without further conduct on his part, or purposely does or omits to do which under the circumstances as a reasonable person would believe them to be is an act of omission, an act or [o]mission constituting a substantial step planned to culminate in the performance of that act. That's the legal definition of purpose.
A person acts purposely with respect to the nature of his conduct or result thereof if it is his conscious object to engage in conduct of that nature which would cause such a result.
A person acts knowingly with respect to the attendant circumstance of his conduct if he is aware that such circumstances exist or there was a high probability of their existence. Knowing or with knowledge or equivalent terms have the same meaning.

*216 If you find that the State has failed to prove any of these elements beyond a reasonable doubt you must find the defendant not guilty. If on the other hand the State has proven all six of the above elements beyond a reasonable doubt you must go on to your deliberations to consider a seventh element which will distinguish third degree [e]luding from the greater offense of second degree [e]luding. The State must prove beyond a reasonable doubt element number seven, that the flight or attempt to [e]lude created a risk of death or injury to any person.
The trial judge also instructed the jurors that they could infer that defendant placed people at risk of death or injury if the defendant's conduct in eluding the officer involved speeding, reckless driving or failure to observe the direction of a police officer. The judge charged:
You may infer risk of death or injury to any person if the defendant's conduct in fleeing or attempting to [e]lude the officer involved a violation of the motor vehicle laws of this state.
It is alleged that the defendant's conduct involved violations of speeding, reckless driving and failure to observe observation of the direction of a police officer. And I'll explain those to you now.
Reckless driving is defined by our statutes as a person who drives a vehicle heedlessly in wilful or wanton disregard of the rights or safety of others in a manner so as to endanger or be likely to endanger a person or property shall be guilty of reckless driving.
Speedingsubject to the provisions of our statute it shall be prima facie law [sic] for the driver of a vehicle to drive it at a speed not exceeding the following: 25 miles per hour in any business or residential district, 35 miles per hour in any suburban business or residential district.
Drivers of vehicles, street cars or horses shall at all times comply with all directions by voice or hand of a member of a police department or a police officer or the director while enforcing any provision of this statute. That's for observance of directions of officers.
Those are the statutes that he has been charged with.
Whether the defendant is guilty or not of these offenses will be determined by an appropriate court. In other words, it's not your job to decide whether he's guilty or not of the motor vehicle offenses including any other motor vehicle offenses mentioned in the testimony. However, you may consider the evidence that he committed a motor vehicle offense in deciding whether he created a risk of death or injury. At the same time remember that you're notyou're never required to compel or draw this inference. As I've already explained, it is your exclusive province to determine whether the facts and circumstances shown by the evidence support any inferences and you're always free to accept or reject any inference if you wish.
If you find the State has proven beyond a reasonable doubt all seven elements of the offense then you must find the defendant guilty of the second degree crime of [e]luding an officer. On the other hand, if you find the State has failed to prove the seventh element beyond a reasonable doubt but has proven the first six elements beyond a reasonable doubt then you must find the defendant not guilty of second degree [e]luding and guilty of third degree [e]luding. Finally, if you find the State has failed to prove any of the first six elements beyond a reasonable doubt then you *217 must find the defendant not guilty of the crime.[1]
Jury instructions must be clear and correct because they serve as "a road map to guide the jury," State v. Cooper, 151 N.J. 326, 363, 700 A.2d 306 (1997) (quoting State v. Martin, 119 N.J. 2, 15, 573 A.2d 1359 (1990)), and, particularly when the judge fails to properly detail an element of the crime, erroneous instructions are "poor candidates for rehabilitation under the harmless error theory." State v. Wilson, 128 N.J. 233, 241, 607 A.2d 1289 (1992); State v. Vick, 117 N.J. 288, 289, 566 A.2d 531 (1989); State v. Weeks, 107 N.J. 396, 410, 526 A.2d 1077 (1987). On the other hand, the charge must "be examined as a whole to determine its overall effect." State v. Delibero, 149 N.J. 90, 106-07, 692 A.2d 981 (1997) (quoting State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973)).
N.J.S.A. 2C:29-2b, in relevant part, provides:
Any person, while operating a motor vehicle on any street or highway in this State ... who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle or vessel to a full stop commits a crime of the third degree; except that, a person is guilty of a crime of the second degree if the flight or attempt to elude creates a risk of death or injury to any person.
Thus, a person may be found guilty of second-degree eluding only if the jury finds that his flight or attempt to elude created a risk of death or injury to any person. State v. Wallace, 158 N.J. 552, 560, 730 A.2d 839 (1999) (finding that "the statute was designed to punish those who elude the police and ... whose unlawful conduct creates a possibility of injury to others[ ]"). See also Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); State v. Johnson, 166 N.J. 523, 766 A.2d 1126 (2001). Our Supreme Court has determined that a permissive inference may be established through evidence that defendant "violated one or more motor vehicle statutes" during the chase. Wallace, supra, 158 N.J. at 558-559, 730 A.2d 839. However, the term "knowingly" does not relate to the risk which aggravates the eluding and makes it a second degree crime. The relevant clauses in N.J.S.A. 2C:29-2b are separated by a semi-colon, and there is no culpability requirement independent of the third degree crime. We, therefore, reject defendant's contention that the judge erred by failing to instruct the jury that it had to find that the defendant "knowingly" created *218 a risk of death or injury to another person.
We recognize that N.J.S.A. 2C:2-2c(3) requires a "knowing" culpability where culpability is intended and the Code is otherwise silent. We also recognize that the "risk of death or injury" factor, whether considered a sentence enhancer or element of the second degree crime, requires a jury finding of proof beyond a reasonable doubt. See Apprendi v. New Jersey, supra, 530 U.S. at 495-97, 120 S.Ct. at 2365-67, 147 L.Ed.2d at 458-59; State v. Johnson, supra, 166 N.J. at 549, 766 A.2d 1126; N.J.S.A. 2C:1-13a. Nevertheless, the structure of N.J.S.A. 2C:29-2b, and a reasonable reading of its provisions, results in a construction that a defendant need not knowingly create the risk so long as the defendant, as in this case, is found to have committed third degree eluding with the requisite knowing culpability. Cf. State v. Mendez, 345 N.J.Super. 498, 785 A.2d 945 (App.Div.2001) (indicating "knowingly flees or attempts to elude" requires knowing culpability). See also State v. Burford, 163 N.J. 16, 20, 746 A.2d 998 (2000).

IV.
Defendant argues that the jury charge violated due process and "conflicted with [the] settled law of State v. Wallace [158 N.J. 552, 730 A.2d 839 (1999) ]" because the jury was allowed to draw an inference which raises eluding to a crime of the second degree without finding, beyond a reasonable doubt, a motor vehicle violation or other violation of law which provides the basis for the inference. N.J.S.A. 2C:29-2b provides that, "[f]or purposes of this subsection, there shall be a permissive inference that the flight or attempt to elude creates a risk of death or injury to any person if the person's conduct involves a violation of chapter 4 of Title 39 or chapter 7 of Title 12 of the Revised Statutes."[2] Defendant insists that the jury must make this finding in light of State v. Wallace.
In Wallace, the Supreme Court noted:
The trial court ... instructed the jury on each element of the following motor vehicle offenses with which defendant had been charged: careless driving, N.J.S.A. 39:4-97, failing to stop at a stop sign, N.J.S.A. 39:4-144, driving the wrong way on a one-way street, N.J.S.A. 39:4-85.1, littering or throwing debris from his vehicle, N.J.S.A. 39:4-64, leaving a vehicle with the engine running, N.J.S.A. 39:4-53, and failure to keep right, N.J.S.A. 39:4-82. The jury found defendant guilty of violating those motor vehicle laws.

Under the proper jury instructions, the State, in reliance on the permissive inference, was not obligated to prove affirmatively that there was "any person" who was placed at risk of death or injury in order to establish that defendant was guilty of second-degree eluding. The present case is to be distinguished from Dorko where the jury was not asked to decide whether the motor vehicle statutes had been violated. Here, the jury found that defendant had committed multiple violations of motor vehicle and traffic laws, and thus properly applied the permissive inference.

*219 [158 N.J. 552, 559-60, 730 A.2d 839 (1999) (emphasis added).]
The jury charge given in State v. Dorko, and our response to same, was as follows:
Now, you may infer such a risk if the defendant's conduct in fleeing or in attempting to elude the officer involved a violation of the motor vehicle laws of this state. It is alleged in this case that the defendant's conduct involved a violation of the following motor vehicle laws: failure to stop at stop signs; speeding; running a red light; making a right turn on red; driving while suspended; reckless driving; and failure to yield to an emergency vehicle. However, you are never required or compelled to draw this inference.
As I've already explained, it is your exclusive province to determine whether the facts and circumstances shown by the evidence support any inference, and you are always free to accept or reject any inference if you wish. As I started to explain to you before, it is, you do not have to decide the motor vehiclethe guilt or innocence of the defendant on the motor vehicle summonses. Those summonses... will be in the jury room with you [and] will be handled by an appropriate court at a later time.
The judge, however, declined to charge the elements of the governing motor vehicle offenses. We determine that the failure of the court to charge the elements of the applicable motor vehicle statutes was additional reversible error.

[298 N.J.Super. 54, 59, 688 A.2d 1109 (App.Div.1997).]
This case is similar to Dorko because the jury was not asked to determine whether the motor vehicle statutes had been violated. Defendant therefore contends that reversal is required. We disagree. So long as the jury was told the elements of the motor vehicle offenses, for it to consider if a violation occurred, the second degree eluding conviction must stand. As we previously noted, the judge charged the jury that it was "alleged that the defendant's conduct involved violations of speeding, reckless driving and failure to observe ... the direction of a police officer." The judge charged the elements of each offense, without objection, and there is no claim that the charge was inadequate in this respect. Having defined the elements of the motor vehicle offenses, the jury had a standard by which the inference could be applied. It was for the judge, not the jury, to determine defendant's actual guilt of the motor vehicle infraction.
As the Criminal Practice Committee reported to the Supreme Court following its decision in Wallace:
The Committee was asked to consider whether the decision of State v. Wallace, 158 N.J. 552, 730 A.2d 839 (1999) required a change in the rules. Specifically, the Committee considered the practice regarding the trial of non-indictables with indictables in light of the Court's opinion and whether it is inconsistent with State v. Muniz, 118 N.J. 319, 571 A.2d 948 (1990).
In Wallace, the trial judge submitted the motor vehicle charges and disorderly persons offenses to the jury along with the eluding charge. In Muniz, the Court held that the lesser included motor vehicle offense were to be brought to the attention of the jury, but had to be determined by the judge. The Court also stated: "we conclude that with respect to the joinder of lesser-included offenses, the Code standards do not permit and common law policies do not require, the simultaneous submission to and the disposition by a jury of motor *220 vehicle violation in conjunction with its determination of offenses under the Code." Id [.] at 331-332, 571 A.2d 948[.] Therefore, since the usual practice pursuant to Muniz is for the judge to reserve decision on the disorderly persons offenses or motor vehicle offenses until after the jury returns its verdict, did Wallace intend to change this practice at least in eluding cases, and, if so, do the court rules need to be changed? In Wallace, the Court held that the trial court's failure to define the term "injury" in a second degree eluding case was harmless error because the defendant had been convicted by the jury of certain motor vehicle law violations, thereby satisfying a rebuttable inference that there was a risk of death or injury. The "problem" with the opinion, brought to the attention of the Criminal Practice Committee by the Conference of Criminal Presiding Judges, was the recitation of the procedural history including defendant's conviction by jury of motor vehicle violations. It seems to many of the presiding judges that presentation of the motor vehicle violations to the jury simultaneously with the criminal charges was inconsistent with the Supreme Court's earlier opinion in Muniz, and the rule changes based thereon embodied in R. 3:15-3.
The Committee believes that the Supreme Court's mere recitation of the procedural history in Wallace, without any endorsement or further discussion concerning same, was not intended to modify Muniz with respect to presentation of motor vehicle violations, even in eluding cases. The Committee suggests that, while no rule change is required, a "comment to the rules should note that Wallace does not change the procedural history of State v. Muniz, 118 N.J. 319, 571 A.2d 948 (1990)." The Committee also hopes this matter can be resolved quickly by case law. The Committee has forwarded its recommendation to Judge Pressler.

[159 N.J.L.J. 664 (Feb. 14, 2000).]
Accordingly, the jury did not have to expressly decide if defendant violated any motor vehicle law.

V.
Defendant also contends in his pro se brief that the extended term sentence, imposed under N.J.S.A. 2C:44-3a, is unconstitutional in light of the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). He specifically asserts that pursuant to Apprendi, supra, a jury, rather than a judge, was required to determine the factors permitting imposition of his extended sentence.
In Apprendi, the majority stated that the jury must find, beyond a reasonable doubt, "any fact (other than prior conviction) that increases the maximum penalty for a crime." Apprendi, supra, 530 U.S. at 476, 120 S.Ct. at 2355, 147 L.Ed.2d at 446. However, the Court expressly noted that the fact of a "prior conviction" need not be found by the jury prior to imposition of an enhanced term based upon a recidivist status. Apprendi, supra, 530 U.S. at 488, 120 S.Ct. at 2361-62, 147 L.Ed.2d at 454.[3]See also State v. Johnson, *221 166 N.J. 523, 535-36, 541, 549, 766 A.2d 1126 (2001) (finding that a jury must determine whether a crime was "violent" for purposes of required ineligibility term under No Early Release Act, but noting status of law concerning recidivism); State v. Stanton, 339 N.J.Super. 1, 6-7, 770 A.2d 1198 (App.Div.2001) (stating "[a]s we understand Johnson ... it holds that if imposition of a statutorily mandated parole ineligibility term is based on the existence of a fact other than a record of a prior conviction, then, as a matter of the imperatives of the Fifth and Sixth Amendments, that fact must be found by a jury beyond a reasonable doubt" (emphasis added)) certif. granted and denied, 169 N.J. 609, 782 A.2d 427 (2001).
The prerequisites to an enhanced sentence under N.J.S.A. 2C:44-3a are related to the issue of "recidivism" and may be found by the judge without presentation to the jury. The statute requires findings "by a preponderance of the evidence." The required fact-finding does not relate to the present offense or its elements. As the Second Circuit recently said:
In short, we read Apprendi as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well. Judges frequently must make factual determinations for sentencing, so it is hardly anomalous to require that they also determine the `who, what, when and where' of a prior conviction.

[United States v. Santiago, 268 F.3d 151, 156 (2d Cir.2001) ].
As with the statute at issue in Santiago, the factual prerequisites to an extended term under N.J.S.A. 2C: 44-3a are "requirement[s that fall] squarely within the range of facts traditionally found by judges at sentencing and is sufficiently interwoven with the facts of the prior crimes that Apprendi does not require" them to be presented to the jury. See also, e.g., People v. Thomas, 91 Cal. App.4th 212, 221-23, 110 Cal.Rptr.2d 571 (Ct.App.2001); People v. Dunn, 2001 WL 1388512 at *4-*5, ___ Ill.App.3d ___, ___ _ ___, 260 Ill. Dec. 94, 760 N.E.2d 511, ___ _ ___ (3d Dist.2001); People v. Dixon, 319 Ill.App.3d 881, 884-86, 254 Ill. Dec. 244, 747 N.E.2d 1, 3-4 (3 Dist.2001) (facts concerning age of defendant at time of prior convictions, number and sequence of convictions need not be decided by jury or beyond a reasonable doubt). Similarly, the factors resulting in an ineligibility term imposed on the extended sentence under N.J.S.A. 2C:44-3a do not require fact-finding by the jury. See State v. Dunbar, 108 N.J. 80, 91-95, 527 A.2d 1346 (1987); compare State v. Johnson, supra (NERA expressed no burden of proof or fact-finder, and the sentencing factor related to the offense); McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (discussed at length in Apprendi and Johnson).

VI.
The record does not support defendant's claim of ineffective assistance of counsel. State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992). The judgment is affirmed.
NOTES
[1] Count one of the indictment charged:

that CALVIN T. DIXON, on or about November 6, 1998, in the Borough of Fort Lee, in the County of Bergen aforesaid, and within the jurisdiction of this Court, or in some other municipality and County within the jurisdiction of this Court, did, while operating a motor vehicle on any street or highway in this State, knowingly flee or attempt to elude law enforcement officers, to wit: Patrolmen Daniel Graber and/or Matthew Lombardo of the Port Authority Police Department after having received a signal from the police or law enforcement officer to bring the vehicle to a full stop, by operating a motor vehicle in a manner which creates a risk of death or injury to any person; contrary to the provisions of NJS 2C:29-2b, and against the peace of this State, the Government and dignity of the same.
There is no contention that the count had to be more specific or assert a specific violation of Title 39. As noted, defendant was charged with six motor vehicle violations, five of which were identified to the jury during the trial. The judge found defendant guilty of reckless driving and dismissed the remaining motor vehicle complaints incident to the sentence.
[2] See N.J.S.A. 2C:1-13e; N.J.R.E. 301 and 303. Presumptions are generally inferences in criminal cases. See, e.g., State v. Ingram, 98 N.J. 489, 498-99, 488 A.2d 545 (1985). They are not elements of the offense which a jury must find in order to convict, and defendant does not contend they are. In any event, proof of the motor vehicle offenses was presented. See Apprendi v. New Jersey, supra, 530 U.S. at 475, 120 S.Ct. at 2354-55, 147 L.Ed.2d at 446.
[3] The Court specifically stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-63, 147 L.Ed.2d at 455. In the absence of any question being raised or an enhanced sentence having been imposed on any ground other than recidivism, we do not address any issue concerning notice of defendant's exposure to an enhanced sentence. See R. 3:21-4(e).