**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3720-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MATTHEW OSEI,

     Defendant-Appellant.

_____

> Submitted May 21, 2019 – Decided July 9, 2019
>
> Before Judges Gilson and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 15-11-1337, 16-01-0112, 16-01-0124, 17-01-0095, 17-02-0154, 17-06-0742, and 17-08-0993.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Cody T. Mason, Assistant Deputy Public Defender, of counsel and on the briefs).
>
> Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Matthew Osei was charged with multiple crimes under seven indictments. A jury convicted defendant of second-degree eluding, N.J.S.A. 2C:29-2(b). Thereafter, defendant entered into a plea agreement to resolve the charges under the other six indictments. Defendant appeals from his conviction of eluding and one of the sentences on his guilty pleas. He also contends that he was improperly required to pay $8774 in restitution without a hearing or an evaluation of his ability to pay. We affirm defendant's eluding conviction and his sentences. We remand for a hearing on the amount of and the ability of defendant to pay restitution.

I.

Between March 2015 and March 2017, defendant allegedly engaged in a spree of crimes, including burglaries, theft, aggravated assault, possession of heroin and fentanyl, and eluding. As noted, defendant was indicted for multiple crimes in seven separate indictments.

In the fall of 2017, defendant was tried on one of the charges: second-degree eluding. The State alleged that on September 21, 2016, a number of people complained about a man riding an all-terrain vehicle (ATV) on the streets in a neighborhood in Colonia. The police responded, and when they saw

defendant about to ride off on an ATV, they ordered him to stop. Instead of obeying that command, defendant sped off and ran a stop sign.

Before trial, the State notified defendant and the trial court that it intended to introduce evidence that defendant had driven in a reckless manner and had been issued a motor vehicle ticket for reckless driving. The State contended that the reckless driving was relevant to whether defendant created a risk of death or injury, which is one of the elements of second-degree eluding.

Initially, the trial court ruled that the ticket for reckless driving was irrelevant because the court would make the ruling on the charge of reckless driving. After the court reviewed the model jury charge on eluding, however, it changed that ruling and held that the ticket for reckless driving was relevant and admissible.

The trial court also conducted a Rule 104 evidentiary hearing outside the presence of the jury to determine whether the State could introduce evidence of three calls, which had been made to the police on September 20 and September 21, 2016. In those calls, three people complained about the manner in which an ATV was being driven on the streets in Colonia.

The State argued that the calls were admissible to explain why the police went to Arthur Avenue on the evening of September 21, 2016. The State also

 A-3720-17T1

contended that the calls were present sense impressions and were admissible as exceptions to the hearsay rule. In opposition, defense counsel objected to all three calls, contending that each call was inadmissible hearsay and evidence of prior bad acts that should be excluded under Rule 404(b).

The trial court excluded the evidence concerning the details of two of the calls, but ruled that the call made by N.D.[1] was admissible because it explained how the events leading up to the eluding unfolded. The court also reasoned that such evidence helped to explain why the police responded to Arthur Avenue.

At trial, the State presented testimony from two witnesses: N.D. and Police Officer Perry Penna. N.D. lived in a neighborhood in Colonia. Sometime around midday on September 21, 2016, N.D. called the Woodbury Police Department to report that a "black male" was "flying up and down" his street on an ATV. The State also played the recording of the call N.D. made to a police dispatcher. N.D. told the dispatcher that a person was riding around on an ATV without a helmet and the "guy is ripping it up out here."

Officer Penna testified that he and Officer Glen Farkas responded to Arthur Avenue at approximately 7 p.m. on September 21, 2016, after the police had received "several complaints of someone driving around an ATV recklessly

---

[1] We use initials to protect the privacy interests of the witness.

on the roads[.]"  In response to an objection by defense counsel, the trial court instructed the jury that the officer's use of the term "reckless" was to be understood in its "common everyday parlance."

Officer Penna went on to testify that he and Officer Farkas responded in an unmarked black Ford Explorer, which was equipped with lights and a siren. As the officers drove by 133 Arthur Avenue, they saw defendant walking away from an ATV with a female companion.  The officers parked their vehicle approximately five to seven houses away from 133 Arthur Avenue, facing where the ATV was parked.

Approximately thirty to forty-five minutes after the officers parked their vehicle, they observed defendant wheel the ATV onto the street and mount it without a helmet.  Officer Penna testified that he pulled his vehicle out in front to block defendant's path, and yelled at defendant:  "Police!  Stop!  Get off the bike!  Police!  Stop!"  According to Officer Penna, defendant then pulled a bandana over his face and drove the ATV around the officers' vehicle "at a high rate of speed," traveled down the road, and made a left turn without stopping at a stop sign.

Officer Penna explained that he elected not to pursue defendant because of the potential dangers of a pursuit in a residential area.  He also stated that

Officer Farkas issued a ticket for reckless driving, and that ticket was admitted into evidence over defense counsel's objection. Defendant elected not to testify and called no witnesses.

The trial court then reviewed the proposed jury instructions with counsel and defendant. The court explained that it was using the model jury charge on eluding with modification on the part of the charge addressing how the jury was to consider evidence that defendant committed a motor vehicle offense. At that time, neither the State nor defense counsel objected to the proposed jury instructions.[2]

After closing arguments, the trial court gave the final instructions to the jury. In explaining the charge of eluding, the trial court outlined seven elements the jury needed to consider. Those elements included: (1) whether defendant was operating a motor vehicle on a street or highway; (2) whether Officer Penna was a law enforcement officer; (3) whether Officer Penna signaled defendant to bring his vehicle to a full stop; (4) whether defendant knew that the officer had

---

[2] Defense counsel did object to the modification of the eluding charge at the very beginning of trial before the jury was sworn and before the Rule 104 hearing. After the State rested, the court again went over the eluding charge with counsel. Thereafter, the court also provided counsel with a typed version of the charge. Defense counsel did not renew its earlier objection.

signaled him to stop; (5) whether defendant knew Officer Penna was a law enforcement officer; (6) whether defendant knowingly fled or attempted to elude the police; and (7) whether the flight or attempt to elude created a risk of death or injury.

The court also instructed the jury that it could infer risk of death or injury if defendant's conduct in fleeing or attempting to elude violated a motor vehicle law. The court explained that the alleged violation here was reckless driving, which is driving a vehicle heedlessly in a willful or wanton disregard of the rights or safety of others and in a manner that endangers, or is likely to endanger, a person or property. The court also instructed the jury that they were not determining defendant's guilt or innocence of reckless driving. Instead, the court explained to the jury that they could consider the evidence surrounding the issuance of the ticket for reckless driving in determining whether defendant created a risk of death or injury. The court also explained to the jury that it was free to accept or reject that inference. Thereafter, the jury found defendant guilty of second-degree eluding.

Several weeks after defendant was convicted of eluding, he entered into a plea agreement to resolve all the other charges pending against him. Under the plea agreement, defendant pled guilty to second-degree burglary, N.J.S.A.

2C:18-2; third-degree burglary, N.J.S.A. 2C:18-2(a)(1); third-degree possession of heroin with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-5(a) and N.J.S.A. 2C:35-7; third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7); third-degree conspiracy to commit credit card fraud, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:21-6(h); third-degree fraudulent use of a credit card, N.J.S.A. 2C:21-6(h); and third-degree unlawful possession of fentanyl, N.J.S.A. 2C:35-10(a)(1).

Defendant was sentenced to five years in prison on the conviction for eluding. On the convictions resulting from his guilty pleas, he was sentenced to five years, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for the second-degree burglary; three years in prison for the third-degree burglary; three years in prison for the aggravated assault; three years in prison for the possession with intent to distribute within a school zone; four years in prison for the fraudulent use of a credit card; and three years in prison for the unlawful possession of fentanyl. The sentencing judge merged the third-degree conspiracy conviction into the conviction for fraudulent use of a credit card.

On the issue of consecutive sentences, the sentencing court deviated from the plea agreement and ruled that he would run all of the sentences concurrent to each other, except the three-year sentence for unlawful possession of fentanyl.

He ran that sentence consecutive to defendant's conviction for second-degree burglary.

On the third-degree burglary conviction, the court also imposed restitution of $8774. The court did not hold a hearing on the amount of the restitution or defendant's ability to pay.

II.

On appeal, defendant makes two primary arguments, each with subparts, which he articulates as follows:

> POINT I – REVERSAL IS REQUIRED BECAUSE THE STATE'S ELUDING CASE WAS IMPROPERLY BOLSTERED WITH OTHER-CRIME AND HEARSAY EVIDENCE ABOUT DEFENDANT RECKLESSLY DRIVING AN ATV, AND IRRELEVANT EVIDENCE ABOUT DEFENDANT BEING CHARGED WITH RECKLESS DRIVING.
>
> > A.    Reversal Is Required Because the Testimony About Defendant Driving an ATV at High Speeds Hours Before the Incident Was Irrelevant Bad-Act Evidence, Which the Court Did Not Instruct the Jury on How to Consider
> >
> > B.    Reversal Is Required Because the Court Allowed the State to Admit Irrelevant and Prejudicial Hearsay Testimony About Multiple People Calling the Police About Defendant "Recklessly" Driving an ATV at Other Times

C.    Reversal Is Required Because the Testimony and Evidence About the Officers Charging Defendant with Reckless Driving Was Irrelevant and Prejudicial

D.    The Cumulative Effect of the Errors Deprived Defendant of Due Process and a Fair Trial and Warrants Reversal

POINT II – A REMAND IS REQUIRED BECAUSE THE COURT IMPOSED A CONSECUTIVE SENTENCE IN VIOLATION OF THE PLEA DEAL AND IMPOSED $8774 IN RESTITUTION WITHOUT HOLDING A HEARING ON THE AMOUNT OR DEFENDANT'S ABILITY TO PAY.

A.    A Remand Is Required Because the Court Imposed a Consecutive Sentence in Violation of the Plea Agreement

B.    A Remand Is Required Because the Court Imposed $8774 in Restitution Without Holding a Hearing on the Amount of Restitution or Defendant's Ability to Pay

These arguments present five issues: (1) whether the testimony and recorded call to the police concerning an individual driving an ATV prior to the eluding was inadmissible evidence of prior bad acts; (2) whether the police officer's testimony concerning citizen complaints about an ATV was inadmissible hearsay and evidence of prior bad acts; (3) whether the ticket for reckless driving was relevant to the charge of second-degree eluding; (4)

10

whether the sentencing judge impermissibly deviated from the plea agreement in sentencing defendant; and (5) whether there needs to be a restitution hearing.

> A. The Testimony and Recorded Call Regarding Someone Driving an ATV Prior to the Eluding

As noted, at trial, the court permitted the State to introduce testimony from N.D. and to play the recording of N.D.'s call to the police. N.D. testified that he had called the police on September 21, 2016, because an ATV "was flying up and down [his] street." In N.D.'s recorded call, he reported that someone was "riding around on an ATV very loud," was "ripping it up," and "flying up and down the street" without a helmet or license plate.

The trial court allowed N.D.'s testimony and the call to police, finding that that evidence was probative to explain why the police responded to the neighborhood. The court also ruled that the recording was an exception to the hearsay rule because it contained N.D.'s present sense impressions of someone riding an ATV.

On this appeal, defendant argues that the testimony by N.D. and the recording of N.D.'s call to the police were irrelevant bad-act evidence. We hold that the trial court abused its discretion in determining N.D.'s testimony and recorded call were relevant to a fact in issue. Nevertheless, the admission of the evidence constitutes harmless error.

We review a trial court's evidentiary rulings for an abuse of discretion. State v. Brown, 236 N.J. 497, 521-22 (2019) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). In contrast, our review is de novo if the court applied the wrong test or failed to perform the required analysis. State v. Garrison, 228 N.J. 182, 194 (2017) (citing State v. Rose, 206 N.J. 141, 158 (2011)).

Rule 404(b) excludes "evidence of other crimes, wrongs, or acts . . . to prove the disposition of a person in order to show that such person acted in conformity therewith." N.J.R.E. 404(b). In this case, the State never alleged that defendant had been the individual who N.D. observed driving an ATV. Indeed, N.D. did not identify the driver of the ATV as defendant in either his trial testimony or during the recording of his call to the police. Instead, N.D. testified that he was unable to make a "facial identification" of the person he had observed riding an ATV. N.D. further testified that the only identifying characteristics he had observed were that the driver was a "black male."

Moreover, the prosecutor, in both her opening statement and closing argument, relied on N.D.'s testimony and the recording of his call to the police solely to explain why the police officers were investigating that area of Arthur Avenue. In short, the State did not directly suggest that defendant was the

individual who had been driving an ATV when N.D. called the police. Nonetheless, the presentation of N.D.'s testimony and recorded call to the police was sufficient to insinuate that defendant was the individual who N.D. had observed driving an ATV earlier in the day, thereby allowing the jury to possibly conclude that defendant had a propensity to drive recklessly. We will, therefore, analyze the evidence under Rule 404(b), because the jury might have inferred that defendant was the individual who N.D. observed driving an ATV earlier in the day.

As previously explained, "Rule 404(b) bars 'evidence of other crimes, wrongs, or acts' when used 'to show that [a] person acted in conformity therewith.'" State v. Green, 236 N.J. 71, 81 (2018) (alteration in original) (quoting N.J.R.E. 404(b)). "Significantly, however, 'evidence that is intrinsic to the charged crime is exempt from the strictures of Rule 404(b).'" State v. Santamaria, 236 N.J. 390, 409-10 (2019) (quoting Rose, 206 N.J. at 177). As such, "[t]he threshold determination under Rule 404(b) is whether the evidence relates to 'other crimes,' and thus is subject to continued analysis under Rule 404(b), or whether it is evidence intrinsic to the charged crime, and thus need only satisfy the evidence rules relating to relevancy[.]" Id. at 410 (quoting Rose, 206 N.J. at 179).

In Rose, the Court held there are "two narrow categories" of intrinsic evidence. 206 N.J. at 180 (quoting United States v. Green, 617 F.3d 233, 248 (3d Cir. 2010)). "First, evidence is intrinsic if it 'directly proves' the charged offense." Ibid. (quoting Green, 617 F.3d at 248). "Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" Ibid. (quoting Green, 617 F.3d at 249). All evidence of other bad acts not fitting within one of those two "tight description[s]" must be analyzed under Rule 404(b). Id. at 180-82. The Court in Rose also instructed courts to analyze "background or 'completes the story' evidence" under Rule 404(b), rather than labeling it intrinsic to the charged crime. Id. at 180-81 (quoting Green, 617 F.3d at 249) (noting "there is no reason that our courts cannot allow, under our Rule 404(b), evidence to be admitted for a . . . "necessary background" . . . purpose).

Here, the evidence that someone was driving an ATV prior to defendant's eluding incident was introduced as "background information" to explain why the police responded to Arthur Avenue. The evidence neither directly proved an element of the eluding charge against defendant nor did it constitute evidence of contemporaneous bad acts that facilitated defendant's eluding. Instead, the earlier operation of the ATV was separate from the activity underlying

14

defendant's eluding charge. As such, it is not intrinsic evidence and, thus, must be analyzed under Rule 404(b).

Courts apply the four-part Cofield test to determine if bad-act evidence is admissible under Rule 404(b). State v. Weaver, 219 N.J. 131, 150 (2014) (citing State v. Cofield, 127 N.J. 328, 338 (1992)). The Cofield test allows courts to admit bad-act evidence if it is: "(1) relevant to a material issue; (2) similar in kind and reasonably close in time to the offense charged; (3) supported by clear and convincing evidence; and (4) its prejudice does not outweigh its probative value." Ibid. (citing Cofield, 127 N.J. at 338). If bad-act evidence "withstands a Cofield analysis, before its admission the trial 'court must instruct the jury on the limited use of the evidence' and 'explain precisely the permitted and prohibited purposes of the evidence.'" State v. Prall, 231 N.J. 567, 582 (2018) (quoting Cofield, 127 N.J. at 341).

Here, the trial court found N.D.'s testimony and the recording of his call had "probative value" and were relevant since they would address "why the police ultimately responded . . . to the address[.]" "There is seldom any justification for admitting" evidence that explains why police are in a certain area, absent a claim by the defendant "that the police acted arbitrarily in approaching him [or her]." State v. Baker, 228 N.J. Super. 135, 139-40 (App.

15

Div. 1988); accord State v. Branch, 182 N.J. 338, 350 (2005) (citing State v. Irving, 114 N.J. 427, 447 (1989) (finding no need for a detective to justify why he placed a defendant's photograph in an array since there was no alleged arbitrary police action)); State v. Bankston, 63 N.J. 263, 272 (1973) ("[T]here was no need . . . to explain that the police were looking for a person described by the clothing he was wearing. There was no allegation that the police were acting arbitrarily.").

The trial court's ruling was an abuse of discretion as defendant had not argued that the police were acting arbitrarily in responding to the area or in attempting to stop defendant. See Branch, 182 N.J. at 350; Irving, 114 N.J. at 447; Bankston, 63 N.J. at 272; Baker, 228 N.J. Super. at 139-40. Thus, the testimony of N.D. and his recorded call were not probative of a fact that was in issue. As such, the evidence cannot satisfy prong one of the Cofield test.

Having found the trial court abused its discretion through the improper admission of irrelevant bad-act evidence, we now consider whether the error was "clearly capable of producing an unjust result." R. 2:10-2; see also Prall, 231 N.J. at 587-88. "[T]o warrant reversal of defendant's conviction, [the] errors, singly or collectively, must 'raise a reasonable doubt' as to whether they affected the result reached by the jury." Prall, 231 N.J. at 588 (quoting State v.

16

Macon, 57 N.J. 325, 336-37 (1971)); accord State v. Kemp, 195 N.J. 136, 149-50 (2008).  In addition, "[t]he error[s] must be evaluated 'in light of the overall strength of the State's case.'"  Prall, 231 N.J. at 588 (alterations in original) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)).

Here, N.D's testimony and the admission of his recorded call were harmless error.  The testimony and recording were limited and not highly prejudicial.  Just as importantly, there was strong, independent evidence offered against defendant on the eluding charge and the trial court appropriately instructed the jury to focus on the elements necessary to prove eluding.  Officer Penna identified defendant as the individual who was involved in the eluding incident on September 21, 2016.  Officer Penna went on to testify that on that date, he observed defendant move an ATV from a driveway, onto the roadway, and then mount it.  Officer Penna also testified that he had angled his police vehicle in front of defendant, "activated the lights and sirens," and yelled "Police!  Stop!  Get off the bike!  Police!  Stop!"

According to Officer Penna, when he and his partner yelled at defendant to stop, the siren on the police vehicle had had been switched off, the vehicle was approximately seven to ten feet away from defendant with its windows lowered, and defendant was still on the ATV "trying to start it with the kick

start." Officer Penna testified that in response to their attempts to stop him, defendant covered his face with a bandana, started the ATV, and drove around the police vehicle at a "high rate of speed." Thereafter, Officer Penna observed defendant drive the ATV past a stop sign without stopping.

In sum, Officer Penna's testimony concerning the events he personally observed on September 21, 2016, constitutes "overwhelming admissible evidence on which to convict defendant" for second-degree eluding. See id. at 588-89. Accordingly, we find any errors by the trial court harmless "because, when evaluated in light of the vast evidence against defendant, those errors were not 'sufficient to raise a reasonable doubt as to whether [they] led the jury to a result it otherwise might not have reached.'" Id. at 588 (alteration in original) (quoting State v. Daniels, 182 N.J. 80, 95 (2004)).

B.  The Testimony of the Police Officer Regarding Complaints About Someone Driving an ATV Prior to the Eluding

At trial, Officer Penna testified that he and Officer Farkas had gone to the neighborhood because the police had "received several complaints of someone driving around an ATV recklessly on the roads in . . . Colonia[.]" Defense

counsel objected to the term "reckless." The trial court overruled that objection and instructed the jury as follows:

> I'm going to allow the testimony to stand with regards to the officer's use of reckless just to explain in the common everyday parlance of what reckless means to him. Okay? In the way - - and based on his communication skills. But please don't attach anything to that, other than the officer's description of what the call was about.

Defendant now argues that Officer Penna's testimony that the police had "received several complaints of someone driving around an ATV recklessly" was inadmissible hearsay of bad acts. Notably, defense counsel did not object to this testimony on that basis at trial. Accordingly, defendant must demonstrate plain error to obtain relief. R. 2:10-2; see also Macon, 57 N.J. at 336-37.

"It is well settled that the hearsay rule is not violated when a police officer explains the reason he approached a suspect or went to the scene of the crime by stating that he did so 'upon information received.'" Bankston, 63 N.J. at 268 (citation omitted). Such testimony is admissible, when relevant, "to show that the officer was not acting in an arbitrary manner or to explain his [or her] subsequent conduct." Ibid. The Court has ruled, however, that "when the officer becomes more specific by repeating what some other person told him [or her] concerning a crime by the accused the testimony violates the hearsay rule." Ibid.

Accord Branch, 182 N.J. at 350. "The 'common thread' that renders testimony about information received from non-testifying third parties inadmissible 'is that a police officer may not imply to the jury that he possesses superior knowledge, outside the record, that incriminates the defendant." Weaver, 219 N.J. at 152 (quoting Branch, 182 N.J. at 351).

Here, it was error to admit Officer Penna's testimony as to the citizen complaints. First, as previously detailed, the reason why the police were in the area was not relevant to a fact in issue, since defendant had not argued that the officers were acting arbitrarily in responding to the area or in attempting to stop defendant. Second, even if Officer Penna's testimony had been relevant, it was hearsay as it went beyond the general statement that he and Officer Farkas traveled to the area of 133 Arthur Avenue "upon information received." Third, while Officer Penna's testimony concerning the citizen complaints did not name defendant, when combined with N.D.'s earlier testimony and the admission of N.D.'s recorded call, that testimony insinuated that defendant was the individual who had been "driving around an ATV recklessly" earlier that day, and therefore, had the propensity to drive recklessly. Accordingly, Officer Penna's testimony as to the citizen complaints was irrelevant hearsay evidence of defendant's prior bad act.

Nonetheless, having carefully reviewed the record, we are convinced that the testimony about the citizen complaints was not clearly capable of producing an unjust result. R. 2:10-2. See also Weaver, 219 N.J. at 154-55 (2014); Kemp, 195 N.J. at 156 (finding even where testimony may implicate "the concerns interdicted by Bankston," a reversal is not required where the totality of the circumstances leads to the conclusion that the admission was harmless); Macon, 57 N.J. at 336 ("[N]ot 'any' possibility [of an unjust verdict] can be enough for a rerun of the trial. The possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.").

As previously discussed, the State presented strong, independent evidence of defendant's guilt on the eluding charge through Officer Penna's testimony concerning the events he personally observed on September 21, 2016. That testimony addressed each of the elements required for a second-degree eluding conviction. See Prall, 231 N.J. at 588.

Moreover, the State did not highlight or inappropriately rely upon Officer Penna's testimony concerning the citizen complaints in its opening statement or closing argument. Cf. State v. Thomas, 168 N.J. Super. 10, 16 (App. Div. 1979) (noting it was contrary to Bankston for the prosecutor to assert, during

summation, that police learned from an informant that defendant may have been involved in a robbery). In her opening, the prosecutor's sole reference to the citizen complaints noted that "on September 21, 2016, members of the Woodbridge Police Department received a report of someone riding an ATV on the streets of Colonia. And they went to investigate." Similarly, in her closing argument, the prosecutor stated that "[t]he evidence showed that Officer Penna conducted an investigation on September 21, 2016 with his partner, Officer Farkas. Because they had some calls about someone riding an ATV on the streets of Colonia . . . [and] were directed to 133 Arthur Avenue." Accordingly, the prosecutor's actual use of the testimony concerning the citizen complaints illustrates that the State did not misuse the testimony to incriminate defendant. In sum, the admission of Officer Penna's testimony concerning the citizen complaints was not "clearly capable of producing an unjust result." R. 2:10-2; Weaver, 219 N.J. at 155 (citing Branch, 182 N.J. at 353).

C.     Whether the Summons for Reckless Driving Was Relevant to the Charge of Second-Degree Eluding

Defendant also argues that the trial court committed reversible error in allowing Officer Penna to testify that defendant was given a ticket for reckless driving and in admitting that ticket into evidence. He argues that the ticket was not relevant to the charge of second-degree eluding. As this issue also involves

22

an evidentiary ruling, we again use an abuse of discretion standard of review. Brown, 236 N.J. at 521-22 (quoting Pomerantz Paper Corp., 207 N.J. at 371).

Defendant was charged with second-degree eluding under N.J.S.A. 2C:29-2(b).  That statute provides in relevant part:

> [a]ny person, while operating a motor vehicle on any street or highway in this State . . . who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle . . . to a full stop commits a crime of the third degree; except that, a person is guilty of a crime of the second degree if the flight or attempt to elude creates a risk of death or injury to any person.

Accordingly, second-degree eluding involves seven elements:  (1) the defendant was operating a motor vehicle on the streets or highway of this State; (2) the person who signaled him to stop was a police officer or law enforcement officer; (3)  the officer signaled defendant to bring the vehicle to a full stop; (4) defendant knew that the officer had signaled him to bring the vehicle to a full stop; (5) defendant knew that the officer was a police officer or law enforcement officer; (6) defendant knowingly fled or attempted to elude the officer; and (7) the flight or attempt to elude created a risk of death or injury to any person. N.J.S.A. 2C:29-2(b).  See also Model Jury Charges (Criminal), "Eluding an Officer (N.J.S.A. 2C:29-2(b))" (rev. Nov. 15, 2004).  Moreover, the eluding statute contains "a permissive inference that the flight or attempt to elude creates

23

a risk of death or injury" if the defendant's conduct involved a violation of the motor vehicle laws of New Jersey. N.J.S.A. 2C:29-2(b); accord State v. Dixon, 346 N.J. Super. 126, 137-38 (App. Div. 2001).

Here, the trial court properly instructed the jury on the elements of second-degree eluding. In that regard, the trial court used the model jury charge, with some modifications to tailor the charge to the facts of the case. Specifically, the trial court instructed the jury on the first six elements of eluding and then informed the jury that if they found each of those six elements were proven beyond a reasonable doubt, then they were to consider the seventh element. The court then properly instructed the jury as to the seventh element. In that regard, the court informed the jury that defendant had been charged with the motor vehicle offense of reckless driving and then correctly defined reckless driving. The court also properly informed the jury that they were not to decide whether defendant engaged in reckless driving as that would be decided by the court. Finally, the court correctly informed the jury that they were not compelled to draw the inference and they were free to accept or reject the inference.

In summary, when we consider the limited testimony concerning the issuance of the ticket for reckless driving in the full context of the proper jury instructions concerning second-degree eluding, we discern no abuse of

discretion in the trial court's admission of the ticket for reckless driving. The important consideration is that the jury was properly charged with the elements of eluding, including whether the flight or attempt to elude created a risk of death or injury to any person. See Dixon, 346 N.J. Super. at 138; State v. Dorko, 298 N.J. Super. 54, 59-60 (App. Div. 1997) (reversing because trial court did not charge jury as to elements of alleged motor vehicle offenses, not because motor vehicle summonses had been admitted into evidence). See also State v. Cagno, 211 N.J. 488, 514-15 (2002) (explaining that jury charges are reviewed as a whole and that courts "must not lose sight of the distinction between instructions that are legally incorrect and those that are merely 'capable of being improved.'" (quoting State v. Delibero, 149 N.J. 90, 106 (1997))).

Finally, we reject defendant's arguments concerning cumulative error. Any errors surrounding the admittance of N.D.'s testimony, the recorded call, and Officer Penna's testimony concerning the citizen complaints were all harmless. Moreover, in combination, that testimony and evidence was also harmless.

D. Whether the Sentencing Judge Impermissibly Deviated From the Plea Agreement in Sentencing Defendant

Following his jury conviction for eluding, defendant negotiated a plea agreement to resolve all his other charges. Under that agreement, the State

agreed to recommend that defendant be sentenced between four and five years on six different crimes, that all those sentences would run concurrent to each other and defendant's sentence on the eluding conviction, except that defendant's sentence of second-degree burglary, which would be five years subject to NERA, would run consecutive to the eluding sentence. At the time that defendant entered into the plea agreement, the court had not yet sentenced him on his eluding conviction.

Thereafter, on March 22, 2018, defendant was sentenced to five years in prison for the jury conviction of second-degree eluding. A week later, on March 27, 2018, defendant was sentenced on the six crimes to which he had pled guilty. The sentencing court accepted and imposed the recommended five-year prison term on the second-degree burglary conviction. The court also imposed the recommended four-year term on the conviction for fraudulent use of a credit card. On the remaining four convictions, the court imposed more lenient sentences than recommended by the State in the plea agreement. Specifically, the court sentenced defendant to a three-year prison term on each of the four convictions, rather than the recommended four-year terms.

The court also deviated from the State's recommendation concerning the consecutive sentence. The court ruled that all of defendant's sentences resulting

from his guilty pleas would run concurrent to each other, with one exception. The court ruled that defendant's three-year sentence for third-degree possession of fentanyl would run consecutive to defendant's five-year sentence for second-degree burglary. The court explained that it was making this ruling because defendant possessed fentanyl when he was on pretrial release from several of his other charges. The court also explained that it felt that such a consecutive sentence was more appropriate and would result in a shorter period of incarceration than anticipated by the plea agreement. In that regard, the court pointed out that if it followed the State's recommendation, defendant's aggregate sentence would be for ten years in prison, with five of those years subject to NERA. Under the court's sentences, defendant's aggregate time in prison would be eight years, with five years subject to NERA.

We review sentencing determinations under a deferential standard. State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 549, 606 (2013)). We do not substitute our judgment for the judgment of the sentencing court. Lawless, 214 N.J. at 606 (first citing State v. Cassady, 198 N.J. 165, 180 (2009); then citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). Instead, we will affirm a sentence unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the

27

sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

[State v. Miller, 237 N.J. 15, 28 (2019) (alteration in original) (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)).]

When sentencing a defendant for multiple offenses, "such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence[.]" N.J.S.A. 2C:44-5(a). In State v. Yarbough, 100 N.J. 627, 643-44 (1985), our Supreme Court established criteria that a sentencing court must consider when deciding whether to impose consecutive sentences. Namely, the court must evaluate whether

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims;
>
> (e) the convictions for which the sentences are to be imposed are numerous[.]

28

[Id. at 644.]

In addition, a sentencing court may also consider and weigh the existence of a negotiated plea agreement in deciding to impose consecutive sentences. State v. S.C., 289 N.J. Super. 61, 71 (App. Div. 1996) (citing State v. Balfour, 135 N.J. 30, 37-40 (1994)). The presence of a plea agreement, however, does not relieve a court of its duty to address the Yarbough factors, see State v. Randolph, 210 N.J. 330, 335-37, 353 (2012), nor does it eliminate a "court's ability to exercise discretion in sentencing." State v. Hess, 207 N.J. 123, 151 (2011). "[A] criminal sentence is always and solely committed to the discretion of the trial court to be exercised within the standards prescribed by the Code of Criminal Justice." Ibid. (alteration in original) (quoting State v. Warren, 115 N.J. 433, 447 (1989)).

Nonetheless, a defendant is "entitled to withdraw a guilty plea if the court imposes a harsher sentence than that contemplated by the plea agreement." State v. McNeal, 237 N.J. 494, 499 (2019) (quoting State v. Bellamy, 178 N.J. 127, 135 (2003)); accord Warren, 115 N.J. at 443. To receive relief from the imposition of a "harsher sentence," however, "a defendant must show that he or she was prejudiced by enforcement of the agreement." Bellamy, 178 N.J. at 135 (citing State v. Howard, 110 N.J. 113, 123 (1988)).

A-3720-17T1

Here, defendant contends that the court impermissibly deviated from the plea agreement by running his sentence for third-degree possession of fentanyl consecutive to his sentence for second-degree burglary. We are not persuaded by this argument because the sentence imposed was, in aggregate, less than the sentence recommended by the State. Defendant would only have a longer sentence if we were to reverse his conviction for eluding. Since we have rejected that portion of his appeal, defendant has no grounds to challenge his sentences because, in aggregate, the sentences are less than what the State was recommending, and the court appropriately detailed its reasons for imposing the consecutive sentence in its thorough analysis of the Yarbough factors.

E.     Whether There Needs to be a Hearing on Restitution

As noted, in connection with defendant's conviction for third-degree burglary, the court ordered defendant to pay restitution of $8774. The court, however, did that without a hearing to address either the amount of the restitution or defendant's ability to pay the restitution.

"[R]estitution serves to rehabilitate the wrongdoer and to compensate the victim of the wrongdoer's conduct." State v. Newman, 132 N.J. 159, 169 (1993); see also N.J.S.A. 2C:43-3 ("A person who has been convicted of an offense may be sentenced to pay a fine, to make restitution, or both[.]"). In imposing

restitution, "the court must balance the goals of victim-compensation and offender-rehabilitation, and thoughtfully establish a fair and reasonable amount of restitution and method of repayment." Newman, 132 N.J. at 173. If there is a good-faith dispute over the amount of loss or defendant's ability to pay, the court is required to conduct a restitution hearing to resolve those issues. See N.J.S.A. 2C:44-2(c); RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 477 (2018) ("A court imposing restitution must 'conduct at least a summary hearing' to determine the ability to pay." (quoting State v. Paladino, 203 N.J. Super. 537, 547 (App. Div. 1985))); State v. Scribner, 298 N.J. Super. 366, 372 (App. Div. 1997); State v. Jamiolkoski, 272 N.J. Super. 326, 329 (App. Div. 1994). Here, as noted, the sentencing court did not conduct a restitution hearing. Accordingly, we vacate the award of $8774 in restitution and remand for a hearing to determine the amount of restitution and defendant's ability to pay.

Defendant's conviction for eluding is affirmed. His sentences are also affirmed. We remand for a restitution hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

31